**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| JASON MANN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:08-CV-611 (JCC/TCB) |
| | ) |
| HECKLER & KOCH DEFENSE, INC. | ) |
| | ) |
| and | ) |
| | ) |
| HECKLER & KOCH GMBH | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff Jason Mann ("Mann"), by and through counsel, hereby files this memorandum of points and authorities in opposition to Defendants Heckler & Koch Defense, Inc.'s, ("HKD") and Heckler & Koch GmbH's ("HKGmbH") (collectively "Defendants") motion to dismiss Mann's Amended Complaint.

Defendants' Motion to Dismiss ("Motion") should be denied in its entirety. Mann has sufficiently pled his two retaliation claims under the False Claims Act ("FCA"). Contrary to the Defendants' arguments, the plain language of the FCA and controlling precedent both mandate a broad interpretation of "protected activities" and Mann's Complaint alleges protected activities that clearly fall within the broad scope of FCA protected conduct. Finally, applying the "short and plain" pleading standard of Federal Rule of Civil Procedure 8, Mann sufficiently pled his two Virginia common law defamation claims.

## SUMMARY OF FACTS

**I.   Mann's Internal Complaints About HKD's Statutory and Regulatory Violations.**

In or around December of 2007, HKD received a Request for Proposal ("RFP") from the United States Secret Service ("Secret Service") seeking bids to supply it with rifles with ambidextrous selector levers ("ambi-levers").  Compl. at ¶¶ 22, 23, 24.  In response to the RFP, HKD made efforts to secure a government contract for the sale of its HK-416 rifles to the Secret Service.  Compl. at ¶ 22.  The RFP required HKD to submit both a bid and sample guns by February 29, 2008.  Compl. at ¶ 30.  Although HKD had designed ambi-levers for the HK-416 rifles, the ambi-levers would not be available by the bid deadline.  Compl. at ¶ 29.  Wayne Weber ("Weber"), Mann's direct supervisor, purchased aftermarket ambi-levers to be installed on the sample guns.  The aftermarket ambi-levers were loose fitting, would not work reliably on HK-416 rifles, did not meet HKD's quality standard, and did not meet the requirements of the RFP.  Compl. at ¶ 32, 33, 35.  HKD submitted its bid and sample guns on February 25, 2008 without ambi-levers.  Compl. at ¶ 34.  On March 3, 3008 (after the February 29, 2008 submission deadline), Mann's subordinate, Robbie Reidsma ("Reidsma"), at the instruction of Weber, delivered the aftermarket ambi-levers for the sample guns to a Secret Service Officer in a Maryland parking lot.  Compl. at ¶¶ 23, 38.  During this delivery at a parking lot, a Secret Service Officer warned Reidsma, "Please do not tell anyone you came here with these or we could both lose our jobs."  Compl. at ¶ 38.

Mann "reasonably believed that the delivery of ambi-levers after the bid submission deadline violated government contracting protocols."  Compl. at ¶ 39.  Mann contacted HKD's former President, Brian S. Marvin ("Marvin") to raise Mann's concerns about HKD's violations of Federal Acquisition Regulations ("FAR").  *See* Compl. at ¶ 40.  Marvin told Mann that HKD

had violated the FAR by submitting the ambi-levers after the bid submission deadline. *Id.* Mann

then "independently researched" the FAR and decided to report Weber's actions because he

"reasonably believed" that they violated "numerous laws and regulations, including, but not

limited to: several sections of FAR Part 12 (on Acquisitions of Commercial Items); FAR Subpart

15.2 (on Solicitation and Receipt of Proposals and Information); and the Procurement Integrity

Act (41 U.S.C. § 423)." Compl. at ¶ 44. Mann also reasonably believed that HKD attempted to

fraudulently induce the Secret Service into accepting the HK-416 rifles and awarding the sales

contract to HKD based on the false representation that the rifles and aftermarket ambi-levers

conformed to the RFP specifications. Compl. at ¶ 47.

On or about March 10, 2008, Mann raised his concerns about HKD's violations of the

False Claims Act to Weber (his supervisor and the subject of allegations of wrongdoing) and

Rob Tarter (HKD's Manager of Military Sales). Compl. at ¶¶ 17, 27, 41-43. Mann also

discussed Weber's actions with John Aliveto ("Aliveto"), HKD's Director of Business

Development, Compl. at ¶ 48, who then conveyed Mann's allegations to Judy Cox, HKD's

Controller, and Roz Weaving, HKD's Human Resources Manager, and recommended how to

initiate an investigation, Compl. at ¶ 49. These individuals then informed Martin Newton

("Newton"), the President of HKD and CEO of HKGmbH, of Mann's allegations. *Id.*

As a result of Mann's disclosures to management, HKD conducted an investigation into

his allegations, during which Mann and other HKD employees provided written statements.

Compl. at ¶¶ 50, 51, 52. On the evening of April 10, 2008, Mann became involved in an

argument with Weber concerning Mann's allegations and, at the conclusion of the argument,

Weber instructed Mann to stay home for the rest of the week and to not come to work until

called back. Compl. at ¶¶ 56-59.

## II.  HKD's Defamatory Statements.

On April 14, 2008, Weber sent an e-mail to HKD employees stating "You may or may not be aware of what occurred last week, but in the event that you are not, here is a brief update. Jason Mann has been placed on administrative leave as of April 9th, pending an internal investigation."  Compl. at ¶¶ 61, 105.  An HKD employee by the name of Jerald Braenz "conveyed to a California police agency weapons dealer that HKD had suspended Mann and the [sic] HKD was investigating Mann's behavior when, in fact, HKD was not investigating Mann."  Compl. at ¶ 67.  Mann also alleges that "HKD damaged Mann's reputation with his customers by informing them that [he] was under investigation when, in fact, [he] was not under investigation." Compl. at ¶ 114.  When asked, Newton informed Mann that he Mann not under investigation and that Weber's April 14, 2008 email should not have been sent.  Compl. at ¶ 65-66.

## III. HKGmbH's Defamatory Statements.

Niels Ihloff,[1] acting as HKGmbH's agent, told Marvin that Mann was a bad employee, was under investigation, questioned Mann's mental stability, and stated that, during his prior employment as a police officer, Mann had shot and killed a man in a questionable situation. Compl. at ¶¶ 71-73, 121.

## IV. Mann's Original Complaint, Termination and Amended Complaint.

On June 11, 2008, Mann filed his original complaint against Defendants in this Court, alleging one FCA retaliation claim and one defamation claim.  [Docket No. 1.]  On June 24, 2008, Mann was informed that he was under investigation concerning the sale of weapons to a police department and that he was suspended with pay pending the outcome of the investigation.

---

[1] Mann's Complaint apparently misspells the name "Ihloff" as "Ehlof."  In this Opposition, Mann adopts Defendants' spelling of Ihloff.

Compl. at ¶¶ 85-86.  On July 17, 2008, Newton notified Mann that, effective immediately, HKD was terminating his employment.  Compl. at ¶¶ 87-88.  On July 18, 2008, Mann filed his Amended Complaint ("Complaint" or "Compl."), asserting the above-described claims and alleging that Defendants further retaliated against him for filing his original complaint.  Compl. at ¶¶ 87, 88, 101, 102.

## ARGUMENT

### I.  STANDARD OF REVIEW

Motions to dismiss should be granted only in very limited circumstances.  *See Fisher v. Va. Elec. and Power Co.*, 258 F. Supp. 2d 445, 447 (E.D. Va. 2003) (Payne, J.).  The court must read the complaint as a whole, accept all of the factual allegations as true, and make all reasonable inferences in the nonmoving party's favor.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, ___ U.S. ___, 127 S.Ct. 2499, 2501 (2007) (citations omitted); *see also Fisher*, 258 F. Supp. 2d at 447.  A Rule 12(b)(6) motion should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991) (citations omitted).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  *See Kuchmas v. Towson Univ.*, No. RBD 60-3281, slip op. at 3 (D. Md. Sept. 10, 2007) (quoting *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001)).  "Once a claim has been stated adequately, it may be supported by showing *any set of facts* consistent with the allegations in the complaint."  *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 466 (4th Cir. 2007) (emphasis in original) (quoting *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1969 (2007)).  A complaint need only state "enough facts to state a claim to relief that is plausible on its face."

*See Kuchmas*, No. RBD 60-3281 at 3 (quoting *Twombly*, 127 S. Ct. at 1974).  A complaint need

not assert "detailed factual allegations" but must contain "more than labels and conclusions" or a

"formulaic recitation of the elements of a cause of action."  *See Kuchmas*, No. RBD 60-3281 at 3

(quoting *Twombly*); *see also Massey Energy Co v. Supreme Court of Appeals of West Virginia*,

No. 2:06-0614, slip op. at 3 (S.D.W. Va (Sept. 21, 2007) (complaint need not "make a case"

against defendant or "forecast evidence sufficient to prove an element") (citing *Chao v. Rivendell

Woods, Inc.,* 415 F.3d 342, 349 (4th Cir. 2005)).

## II.  MANN STATES CLAIMS OF RETALIATION UNDER THE FALSE CLAIMS ACT

### A.  Retaliation under 31 U.S.C. § 3730(h).

The retaliation provision of the False Claims Act provides:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any
> other manner discriminated against in the terms and conditions of employment by his or
> her employer because of lawful acts done by the employee on behalf of the employee or
> others *in furtherance of an action under this section, including investigation for*, initiation
> of, testimony for, or assistance in an action filed or to be filed under this section, shall be
> entitled to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h) (emphasis added).  To prove that an employer has retaliated against its

employee in violation of the FCA retaliation provision, 31 U.S.C. § 3730(h), the employee must

"prove that (1) he took acts in furtherance of a qui tam suit [i.e. engaged in 'protected activity']; (2)

his employer knew of these acts; and (3) his employer discharged him as a result of these acts."

*See Zahodnick v. International Business Machines Corp*., 135 F.3d 911, 914 (4th Cir. 1997).  The

Defendants recognize in their Motion that "an employee need not establish that he or she actually

filed, or testified in, a qui tam lawsuit to avail him- or herself of Subsection (h)'s protections."  *See*

Motion at 8 (citing *Brandon v. Anesthesia & Pain Mgmt. Assoc., Ltd.*, 277 F.3d 936, 944 (7th Cir.

2002)).

Defendants seek to impose a heightened pleading standard in FCA retaliation claims, but this effort to rewrite § 3730(h) has been rejected by numerous courts. *See, e.g., Mendiondo v. Centinela Hosp. Medical Center,* 521 F.3d 1097, 1004 (9th Cir. 2008) ("We hold that the heightened pleading requirements of Rule 9(b) do not apply to FCA retaliation claims. Instead, a FCA retaliation claim must meet the Rule 8(a) notice pleading standard").

### 1.  Mann Sufficiently Pled Protected Conduct.

Controlling Fourth Circuit precedent instructs that protected conduct under § 3730(h) should be construed broadly. *See Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 866-68 (4th Cir.1999). In particular, "an employee engages in protected activity when litigation is a 'distinct possibility,' … when the conduct 'reasonably could lead to a viable FCA action, ... or when … litigation is a 'reasonable possibility.'" *See id.* at 867. Consistent with the Fourth Circuit's expansive definition of FCA protected conduct, the legislative history of § 3730(h) demonstrates that Congress intended that the FCA's whistleblower protections be broadly construed. *See* S. Rep. No. 99-345, at 34 (1986) ("[T]he committee believes protection should extend not only to actual qui tam litigants, but to those who assist or testify for a litigant, as well as those who assist the government in bringing a false claims action. Protected activity should therefore be interpreted broadly.").

Mann's Complaint sufficiently pleads protected conduct by alleging that he conducted an investigation that could have led to the filing of a *qui tam* action, disclosed reasonably perceived violations of the FCA to HKD management, and filed a retaliation action under § 3730(h).

### a.  Mann Engaged in Protected Conduct by Conducting an Investigation that Reasonably Could have Led to the Filing of a Qui Tam Action.

Section 3730(h) specifically lists "investigation for" a FCA action as protected conduct, *i.e.*, a plaintiff is protected where he is investigating matters which reasonably could lead to a

viable FCA action.  *See* 31 U.S.C. § 3730(h); *Eberhardt*, 110 F. Supp. 2d at 867.  The Fourth

Circuit has explained that "an employee need not have actually filed a qui tam suit or even know

about the protections of section 3730(h) in order to engage in protected activity."  *See Eberhardt,*

167 F.3d at 866-67 (*quoting Zahodnick*, 135 F.3d at 914).   The FCA does not require that an

employee "must already have discovered a completed case" to be protected.  *See U.S. ex rel.*

*Yesudian v. Howard Univ.*, 153 F.3d 731, 740 (D.C. Cir. 1998).  Instead, the FCA protects

employees "while they are collecting information about a possible fraud before they have put all

the pieces together."  *See Neal v. Honeywell Inc.,* 33 F.3d 860, 864 (7th Cir. 1994).  As the D.C.

Circuit explained in *Yesudian,* a case that the Fourth Circuit cited with approval in *Eberhardt:*

> An initial investigation may well further an action under the Act, even though
> the employee does not know it at the time of the investigation. Were that not
> the case, only lawyers – or those versed in the law—would be protected by the
> statute, as only they would know from the outset that what they were
> investigating would lead to a False Claims Act prosecution. There is no
> suggestion in the legislative history that Congress meant to extend protection
> only to lawyers or to others only after they have consulted with lawyers.

153 F.3d at 741.

Mann's Complaint pleads in detail his investigation of matters which could reasonably

lead to a viable FCA action concerning HKD's attempts to fraudulently procure a contract.  In

particular, Mann researched the applicable FAR that HKD violated, Compl. at ¶ 44, and "met

and discussed Weber's actions with John Aliveto ("Aliveto"), HKD Director of Business

Development," who "confirmed that Weber had acted unlawfully, and that his actions needed to

be reported."  *See id.* at ¶ 48.  Applying the plain meaning of § 3730(h), Mann's detailed

averment of his investigative activities in furtherance of a qui tam action demonstrate that he put

HKD on notice that a qui tam action was "a distinct possibility" and therefore his Complaint

more than adequately pleads protected conduct.

**b. Mann Engaged in Protected Conduct by Initiating an Investigation and Disclosing to HKD Management Reasonably Perceived Violations of the False Claims Act.**

Under § 3730(h), protected conduct includes providing information that precipitates an investigation of fraud on the government. *See, e.g., Chomer v. Logansport Mem'l Hosp.,* No. 1:03-CV-0733, slip op. at 4 (S.D. Ind. Oct. 29, 2003) ("'[S]upplying information that sets off an investigation' qualifies as an action in furtherance of an FCA enforcement action to be filed.") (*quoting Neal v. Honeywell*, 33 F.3d 860, 864 (7th Cir. 1994)).[2]  Mann's Complaint avers that he reported to HDK management his reasonable suspicions that HKD tried to fraudulently procure a contract with the Secret Service, Compl. at ¶¶ 41-42, 47-48, 50.   For example, Mann met with Aliveto and discussed his belief that HKD attempted to secure a government contract through false representation, and reported to Aliveto HKD's false representation that aftermarket ambi-levers conformed to the RFP specifications when in fact the aftermarket ambi-levers did not work with the HK-416 rifles.  Compl. at ¶¶ 32, 35, 47-48.  Aliveto "confirmed that Weber had acted unlawfully, and that his actions needed to be reported."  *Id.* at ¶ 48.  As a result of Mann's disclosures, HKD launched an internal investigation.  *Id.* at  ¶ 52.  Mann has pled facts demonstrating that he provided information to HKD management that set off an investigation of HKD's attempt to fraudulently procure a contract; therefore, Mann sufficiently pled protected conduct.

While HKD contends that Mann's disclosures about HKD's attempt to fraudulently procure a contract could not have led to a legitimate qui tam action, well-established precedent compels a contrary conclusion.  The False Claims Act prohibits "material misrepresentations made to qualify for government privileges or services."  *U.S., ex rel. Laird v. Lockheed Martin*

---

[2]     *Honeywell*  is a leading case construing protected conduct under § 3730(h), and the Fourth Circuit has cited the decision with approval in *Eberhardt.  See* 167 F.3d at 867.

*Engineering & Science Services Co.*, 491 F.3d 254, 261 (5th Cir. 2007) (*quoting United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir.1997)); *see also United States v. Data Translation, Inc.*, 984 F.2d 1256, 1267 (1st Cir.1992).  Moreover, the legislative history of the FCA states that "each and every claim submitted under a contract ... which was *originally obtained by means of false statements or other corrupt or fraudulent conduct* ... constitutes a false claim." S.Rep. No. 99-345, at 9 (1986), U.S. Code Cong. & Admin.News 1986, pp. 5266, 5274 (emphasis added).   As Mann has pled that HKD attempted to obtain a contract through fraud or deception, which would thereby taint any claim for payment under such contract, he has sufficiently alleged that he had a reasonable belief that HKD was violating the FCA.

Where an employee's disclosure to management is coupled with an investigation of false or fraudulent claims, a qui tam action is "a reasonable possibility" at the time the report is made and hence the employee has engaged in protected conduct.  *See Eberhardt*, 167 F.3d at 868-69 ("once an investigation involves such claims and the employee expresses concern to his employer that there actually is a likelihood of fraud or illegality, then the notice requirement is met.").   Mann has pled that he not only disclosed a likelihood of fraud or illegality, Compl. at ¶¶ 42, 48, but also prompted HKD to conduct an investigation of Mann's allegations. S*ee* Compl. at ¶¶ 41-42, 48-51.  Under *Eberhardt*, Mann's disclosures to HKD management put HKD on notice that there was a distinct possibility of a qui tam action and therefore he has sufficiently pled protected conduct under the FCA.

### c.   Mann Engaged in Protected Conduct by Commencing a FCA Retaliation Action Against HKD and HKGmbH.

While admitting that they lack any case authority for their position, Defendants contend that the filing of a FCA retaliation lawsuit does not constitute protected activity.  *See* Motion at

13.   The plain meaning of the statute, the legislative history and well-established precedent construing analogous whistleblower retaliation statutes, however, compels a contrary construction of the FCA.

"[T]he starting point for interpreting a statute is the language of the statute itself.  Absent a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive."  *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980).   The text of § 3730(h) expressly protects lawful acts taken "in furtherance of an action under this section, *including ... initiation of ... an action filed or to be filed under this section*." 31 U.S.C. § 3730(h) (emphasis added).  As an FCA retaliation claim is "an action filed or to be filed under [§ 3730]," filing such a claim constitutes protected activity.

Without first demonstrating any ambiguity, Defendants ask this Court to disregard the plan text of the statute on the grounds that the legislative history of the FCA "clearly indicates that the provision's whistleblower protections were meant to apply only to employees who report fraudulent claims for payments made by contractors to the federal government."  *See* Motion at 13.   This selective quotation of the history misses the mark.  The legislative history of the FCA's retaliation provision expressly states:

> The 'protected activity' under this section includes any 'good faith' exercise of an individual 'on behalf of himself or other of *any option offered by this Act*, including … *an action filed or to be filed under this act*.'

S. Rep. 99-345, 34 (1986) (emphasis added).  Filing an FCA retaliation claim is one of the "option[s] offered by [the FCA]," and therefore Congress clearly intended to protect from retaliation plaintiffs who pursue retaliation claims under the FCA.

In addition, the legislative history states that §3730(h) is modeled upon other whistleblower protection statutes, which suggests an intention to adopt the body of case law

construing these similar whistleblower protection statutes.  In particular, the FCA retaliation

provision is modeled upon eight whistleblower protection statutes:

> In forming [§ 3730(h)], the Committee was guided by the whistleblower
> protection provisions found in Federal safety and environmental statutes including
> the Federal Surface Mining Act, 30 U.S.C. 1293, Energy Reorganization Act, 42
> U.S.C. 5851, Clean Air Act, 42 U.S.C. 7622, Safe Drinking Water Act, 42 U.S.C.
> 300j-9, Solid Waste Disposal Act, 42 U.S.C. 6971, Water Pollution Control Act,
> 33 U.S.C. 1367, Comprehensive Environmental Response, Compensation and
> Liability Act, 42 U.S.C. 9610, and Toxic Substances Control Act, 15 U.S.C. 2622.

S. Rep. 99-345 at 34 (1986).  As filing a complaint under these whistleblower retaliation

provisions constitutes protected conduct,[3] Congress must have intended for § 3730(h) to protect

the filing of a retaliation complaint.

Moreover, it is "the almost uniform practice of courts [to consider] the authoritative body

of Title VII case law when interpreting the comparable provisions of other federal statutes."

*Darveau v. Detecon, Inc.,* 515 F.3d 334, 342 (4th Cir. 2008) (interpreting the retaliation

provision of the Fair Labor Standards Act).  *See also McKennon v. Nashville Banner Publ'g. Co.*,

513 U.S. 352, 357-61 (1995) (interpreting the Age Discrimination in Employment Act); *Garcia

v. Johanns*, 444 F.3d 625, 631-33 & n. 7 (D.C. Cir. 2006) (interpreting the Equal Credit

Opportunity Act);  *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998)

(interpreting the retaliation provision of the Americans with Disabilities Act).  It is well-

established that under Title VII 's retaliation provision, filing a discrimination complaint

constitutes protected conduct.  *See, e.g., Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998); *see

also Blizzard v Newport News Redevelopment & Housing Authority*, 670 F.Supp. 1337 (E.D. Va.

1984) (no requirement that EEOC charge be meritorious).  Applying Title VII retaliation

---

[3] *See, e.g., Tennessee Valley Authority v. Frady,* 134 F.3d 372, n. 1 (6th Cir. 1998) (filing a
complaint is clearly a protected activity under the ERA).

precedent to what Defendants contend is an unsettled issue strongly militates in favor of finding

that the filing of a § 3730(h) complaint is an act of protected conduct under § 3730(h).  In sum,

Mann's allegation that he filed a complaint under § 3730(h) sufficiently pleads protected

conduct.

### B. *Dookeran* and *Zahodnik* Do Not Support Defendants' Position

Relying on *Dookeran v. Mercy Hospital of Pittsburg*, 281 F.3d 105 (3rd Cir. 2002),

Defendants claim that Mann's actions were "merely the first step in a process that might have

led, but did not actually lead, to the authorization of payment of federal funds," and therefore

Mann's disclosures about HKD's attempt to fraudulently procure a contract with the Secret

Service does not constitute protected conduct.  *See* Motion at 8-9, citing *Dookeran*, 281 F.3d at

105.  *Dookeran*, however, is inapposite because, contrary to Defendants' description of the case,

the plaintiff in *Dookeran* did not disclose fraud in a hospital's "application for funding."  *See*

Motion at 11.  Instead, the application about which the plaintiff raised concerns in *Dookeran*

"was not a request or demand for federal funds" and if the application had been successful, "no

money, either federal or private, would have been paid to [the defendant]."  281 F.3d at 109.  In

the instant case, however, HKD was attempting to procure a contract for the sale of machine

guns to the United States Secret Service, Compl. at ¶¶ 22, 30, 34, 36, which would have resulted

in the federal government paying money to HKD to purchase firearms.  Mann's disclosures are

protected under the FCA because the FCA prohibits procuring a contract through fraud.  *See,*

*e.g.*, *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) ("[a]

'false or fraudulent claim' includes those instances 'when the contract or extension of

government benefit was obtained originally through false statements or fraudulent conduct.'

That is, the fraud may have been in the inducement.") (quoting *Harrison v. Westinghouse*

*Savannah River Co.*, 176 F.3d 776, 787 (4th Cir. 1999)); *U.S. ex rel. Wilkins v. North American Const. Corp.,* 173 F.Supp.2d 601, 632 (S.D.T.X. 2001) ("liability may attach under the False Claims Act because of fraud surrounding representations made to obtain a contract or to obtain payment under a contract.").

According to Defendants, *Dookeran*, which is not controlling authority, requires dismissal of Mann's FCA retaliation claim because a plaintiff must "allege that the government accepted" a solicitation for federal funds before he can allege a reasonable belief that a false claim existed. *See* Motion at 12. The Supreme Court, however, has held that "a well-pleaded retaliation complaint *need not allege that the defendant submitted a false claim*." *Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 416 (2005) (emphasis added). Similarly, the Fourth Circuit has held that a FCA retaliation plaintiff need not allege that the defendant submitted a false claim and instead 'engages in protected activity when … when the conduct 'reasonably could lead to a viable FCA action, ... or when . . . litigation is a 'reasonable possibility.'" *See Eberhardt*, 167 F.3d at 867. As Mann did not file his claim in the Third Circuit, *Dookeran* is not controlling and certainly does not countermand contrary controlling Supreme Court and Fourth Circuit precedent.

Defendant's also rely on *Zahodnick v. International Business Machines Corp*., 135 F.3d 911 (4th Cir. 1997). In *Zahodnick*, the plaintiff "merely informed a supervisor of the [mischarging] problem and sought confirmation that a correction was being made …." *Id*. at 914. The Fourth Circuit found that such actions were not protected by the FCA. *Id*. However, Mann's actions far exceed those of the plaintiffs in *Zahodnick*. Mann expressed to his supervisor his belief that HKD acted fraudulently. Compl. at ¶¶ 42, 94. Mann also discussed his concerns of fraudulent conduct with upper management at HKD, Compl. at ¶¶ 48, 94, and Mann's

14

disclosures of fraudulent conduct prompted an internal investigation into the allegations. Compl. at 49-52, 94. These facts are more than sufficient to distinguish the instant case from *Zahodnick*.

### III. MANN STATES A DEFAMATION CLAIM AGAINST HKD.

HKD claims that Mann's defamation action must be dismissed because Mann did not sufficiently plead HKD's statement to its customers with the requisite particularity, Motion at 13, and Mann failed to plead how Weber's April 14 email announcing Mann's suspension is false. Motion at 14. HKD's proposed heightened pleading standard, however, is contrary to controlling Fourth Circuit precedent, and even HKD admits that Mann has averred that Weber's email incorrectly suggested that Mann was the subject of an investigation. *See* Motion at 15.

Contrary to HKD's erroneous assertion, Mann is not required to plead the "exact words spoken or written" of the alleged defamatory statements. Instead, the governing pleading standard is Federal Rule of Civil Procedure 8 ("Rule 8"), which merely requires Mann to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, ___ U.S. ___, 127 S.Ct. 2197, 2200 (2007) (internal citation removed); *accord CaterCorp. Inc., v. Catering Concepts. Inc.,* 431 S.E.2d 277, 279 (Va. 1993) (denying motion to dismiss and holding that, when a complaint "contains sufficient allegations of material facts to inform a defendant of the nature and character of the claim, it is unnecessary for the pleader to descend into statements giving details of proof."). Surprisingly, Defendants' motion completely omits any mention of a case directly on point from this Court, which sets forth the governing Fourth Circuit pleading standard in a defamation action:

> Applying Virginia law, the Fourth Circuit has made it clear that 'a defamation complaint must only provide a 'short and plain' statement of the claim that is sufficient to give the defendant fair notice of the nature of the claim and the grounds upon which it rests.' *Indeed, the Fourth Circuit has declared it to be error to 'appl[y] a stricter standard to [a plaintiff's] complaint than the ordinary standards under [Federal Rule of Civil Procedure] 12(b)(6).'*

15

*Harrington v. Sprint Nextel Corp.*, No.1:08CV336, slip op. at 5 (E.D. Va. May 29, 2008)

(Cacheris, J.) (emphasis added) (citing *Southprint, Inc. v. H3, Inc*., 208 Fed. Appx. 249, 254 n2

(4th Cir. 2006); *see also Hatfill v. N.Y. Times Co.*, 416 F.3d 320, 329 (4th Cir. 2005) (holding

that the district court erred in reviewing the complaint "with particular care" and concluding that

a defamation complaint is "like any other civil complaint in federal court" for pleading

purposes).  Defendants' omission of controlling case authority does not enable them to avoid

well-established precedent in the Fourth Circuit rejecting Defendants' proposed heightened

pleading standard for defamation claims in federal court.  Moreover, even if HKD's heightened

pleading standard applies, Mann's Complaint meets that standard.  In particular, he quotes

verbatim Weber's April 14 defamatory email.  Compl. at ¶105.

      Moreover, Mann meets the governing Rule 8(a)(2) standard for a defamation action in

that he pleads that Defendants published a false statement about him to third-parties.  *See Gazette*

*Inc. v. Harris,* 325 S.E.2d 713, 725 (Va. 1985), *cert. denied,* 472 U.S. 1032 and 473 U.S. 905

(1985) (ruling that falsity is necessary for a *prima facie* case of defamation); *see also Union of*

*Needletrades v. Jones,* 603 S.E.2d 920, 924 (Va. 2004).  Mann pleads that Defendants HKD

falsely portrayed Mann as the subject of an internal investigation to HKD staff and customers,

*see* Compl. at ¶¶ 61-65, 67, 100, and that HKGmbH falsely stated to a third party that: 1) Mann

shot and killed a man under questionable circumstances; 2) Mann's mental stability was

questionable; and 3) Mann was a bad employee under investigation.  *See* Compl. at ¶¶ 71-73,

121, 126.  As Mann's Complaint provides Defendants detailed notice of the statements that

impute to Mann a criminal offense involving moral turpitude and unfitness to perform the duties

of his employment, Mann has sufficiently pled his defamation claims.  *See, e.g., WJLA-TV v.*

*Levin*, 564 S.E.2d 383, 391 (Va. 2002) ("[I]t is self-evident … [and] manifestly apparent" that

statements about a male doctor treating female patients in medically inappropriate ways "posed a substantial danger to his reputation as a physician"); *Fuste v. Riverside Healthcare Association, Inc.*, 575 S.E.2d 858, 861-62 (Va. 2003) (statements that doctors "abandoned" their patients and that there were "concerns about their competence" prejudiced the doctors in the practice of their profession).

Defendants' attempt to minimize the obvious import of Weber's email announcing Mann's suspensions strains credulity.  Without any additional explanation or context, Weber sent an email to HKD employees stating:

> You may or may not be aware of what occurred last week, but in the event that you are not, here is a brief update.  Jason Mann has been placed on administrative leave as of April 9th, pending an internal investigation.

Compl. at ¶¶ 61, 105.  Weber's email strongly suggests that Mann was placed on administrative leave because Mann was the subject of an internal investigation, which is an untrue statement. *See* Compl. at ¶¶ 61-66.

It is well-established that the meaning of a defamatory statement may come not only from the actual words used, but also from any "inferences fairly attributed to them."  *Wells v. Liddy*, 186 F.3d 505, 523 (4th Cir. 1999) (internal citation removed) ("We look not only to the actual words spoken, but also to 'inferences fairly attributable to them,'… and consider whether the words have the potential to hurt the plaintiff's reputation among the 'important and respectable' parts of the community.").  The defamatory words themselves must be viewed in context, with "all the surrounding facts and circumstances … taken into consideration, and the whole case … looked at in the light of its own particular facts." *Zayre of Va., Inc. v. Gowdy*, 147 S.E.2d 710, 713 (Va. 1966).  *See also Richmond Newspapers, Inc. v. Lipscomb*, 362 S.E.2d 32, 43 (Va. 1987) (noting that "the jury should see the entire article to determine the context of the particular

defamatory statements" and "determine which statements were defamatory statements of fact …

taking into consideration the entire background of the case and the context in which those

statements were made"), *cert. denied*, 486 U.S. 1023 (1988).  As HKD admits in its Motion,

Mann has pled that "Weber's e-mail implied that Mann was the subject of an internal

investigation."  *See* Motion at 15.  If Weber in fact sought to communicate in his email that

Mann was suspended while Defendants were investigating Mann's allegations, then logically

Weber's email would have stated as much.  Instead, Weber published a false statement about

Mann strongly suggesting that Mann was placed on administrative leave while HKD was

investigating Mann (not his allegations).  As Mann has pled that Weber's April 14 email is a

false statement that has a strong potential to harm Mann's reputation among colleagues and

customers, it constitutes actionable defamation.

### IV.    Mann States a Defamation Claim Against HKGmbH

Defendants assert that Mann fails to state a defamation claim against HKGmbH because

Mann does not state the exact words uttered by Ihloff, an agent of HKGmbH, Compl. at ¶ 121,

and Mann does not plead in detail how Ihloff was acting on behalf of HKGmbH when he

defamed Mann's reputation.  Motion at 15-16.  As discussed in Part III of this Opposition's

Arguments Section, controlling Fourth Circuit precedent does not require Mann to plead the

exact words giving rise to his defamation claim, and Mann pleads in detail the defamatory

statements that Ihloff communicated to Marvin, albeit not quoting every word uttered by Ihloff

about Mann.  *See* Compl. at ¶¶ 71-74.

Mann's alleged failure to plead vicarious liability with sufficient particularity is a red

herring in that HKGmbH has the standard of review upside down.  HKGmbH, not Mann, will

have the burden of demonstrating that Ihloff was not acting within the scope of his employment

when he defamed Mann on behalf of Defendants.   *See Kensington Associates v. West*, 362 S.E.3d 900, 901 (Va. 1987) ("[w]hen an employer-employee relationship has been established, 'the burden is on the [employer] to prove that the [employee] was not acting within the scope of his employment when he committed the act complained of.'")  (*quoting Broaddus v. Standard Drug Co.*, 179 S.E.2d 497, 504 (Va. 1971); *see also Plummer v. Center Psychiatrists, Ltd.,* 476 S.E.2d 172, 175 (Va. 1996) ("[A]t this stage of the proceedings, there simply are not sufficient facts which would permit us to hold, as a matter of law, that the defendant has met its burden of showing that its employee was *not* acting within the scope of his employment." (emphasis in the original)).  In his Complaint, Mann pleads an employer-employee relationship between Ihloff and HKGmbH, *see* Compl. at ¶¶ 71, 121-122, 134, and therefore he has pled vicarious liability.

## CONCLUSION

The factual averments in Mann's complaint sufficiently plead the elements of his FCA retaliation claims.  For all the reasons stated above, Defendants' Motion should be denied in its entirety.

Jason Mann
*By Counsel*

____/s/_____
R. Scott Oswald
VSB# 41770
*Counsel for the Plaintiff*
Jason Zuckerman
VSB# 46029
*Counsel for the Plaintiff*
The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2810
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
jzuckerman@employmentlawgroup.net

19

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 2nd day of September 2008, a true and correct copy of

the foregoing Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's

Motion to Dismiss was filed electronically with the Clerk of Court using the CM/ECF system,

which sends a notification of such filing (NEF) to the following:


John Scalia, Esq.
Matthew H. Sorensen, Esq.
*Attorney for Defendants Heckler & Koch Defense, Inc.,*
*and Heckler & Koch Gmbh*
Greenberg Traurig, LLP
1750 Tysons Blvd., Suite 1200
McLean, VA 22102
(703) 749-1300
(703) 749-1301 (facsimile)
sorensenm@gtlaw.com


                                               /s/
                                               R. Scott Oswald
                                               VSB# 41770
                                               *Counsel for the Plaintiff*
                                               Jason Zuckerman
                                               VSB# 46029
                                               *Counsel for the Plaintiff*
                                               The Employment Law Group, P.C.
                                               888 17th Street, NW, Suite 900
                                               Washington, D.C. 20006
                                               (202) 261-2810
                                               (202) 261-2835 (facsimile)
                                               soswald@employmentlawgroup.net
                                               jzuckerman@employmentlawgroup.net