UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| JASON MANN, <br>     Plaintiff, <br><br> v. <br><br> HECKLER & KOCH DEFENSE, INC. <br> et al., <br>     Defendant. | Case No. 1:08cv611 (JCC/TCB) |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants Heckler & Koch Defense, Inc. ("HKD") and Heckler & Koch GmbH ("HKGmbH") (collectively "Defendants") hereby submit this reply memorandum in support of their motion to dismiss Plaintiff Jason Mann's Amended Complaint.

## INTRODUCTION

Mann argues in his opposition to Defendants' motion that his internal complaint about HKD's actions in connection with its bid on the Secret Service contract and his subsequent FCA retaliation lawsuit constitute protected activity under the FCA. Mann's arguments, however, fail to distinguish adequately the controlling Fourth Circuit precedent that Defendants cite in their motion (*i.e., Dookeran* and *Zahodnick*). Those cases make clear that neither Mann's internal complaint nor his subsequent retaliation lawsuit constitutes protected activity under Subsection (h) of the FCA.

Mann's opposition also fails to establish the viability of his defamation claim against HKD (Count III of the Amended Complaint). Mann does not dispute the truth of the exact words that HKD allegedly published, asserting instead that those words, while true on their face, carried a false implication. Under the doctrine of libel by implication of true facts, however, libel cannot

1

be established where the allegedly libelous communication merely conveys materially true facts from which a defamatory inference reasonably can be drawn - unless the communication, by the particular manner or language in which the true facts are conveyed, supplies additional, affirmative evidence suggesting that the defendant intends or endorses the defamatory inference. Here, neither the words themselves nor the manner in which they were conveyed suggest any intention by HKD to supply any false or defamatory information.

Finally, with respect to Mann's defamation claims, his opposition fails to address this Court's decision in *Gibson v. Boy Scouts of America* or the Virginia Supreme Court decision in *Federal Land Bank of Baltimore v. Birchfield*, both of which establish that under Virginia law a plaintiff must plead and prove the exact words on which a defamation claim is based as an essential element of the claim. Accordingly, by failing to allege the exact words that he claims were defamatory, Mann has failed to state a claim of defamation in Counts III and IV (with the exception of the allegedly defamatory e-mail).

## ARGUMENT

**I.   Mann's Opposition Fails To Identify Sufficient Factual Allegations In The Amended Complaint To Support His Claim That He Engaged In Protected Activity.**

Mann contends in his opposition that the Amended Complaint sufficiently alleges that he engaged in protected activity under the FCA's anti-retaliation provisions because (1) his internal complaint about the Secret Service contract bid disclosed facts that reasonably could have led to the filing of a *qui tam* action and (2) he subsequently filed a retaliation lawsuit under Subsection (h) of the FCA. For the following reasons, however, Mann has failed to rebut Defendants' arguments that neither his internal complaint nor his subsequent filing of his FCA retaliation lawsuit qualifies as protected activity under Subsection (h).

First, Mann fails to distinguish this case from *Dookeran*, which held that a complaint regarding suspected fraudulent activity that was merely the first step of a process that might have led, but did not actually lead, to the authorization of payment of federal funds does not constitute a protected act under the FCA's anti-retaliation provisions.  Second, Mann fails to provide any controlling authority to support his contention that, notwithstanding the Fourth Circuit's holding in *Zahodnick* (which he ignores), Subsection (h) protects not only acts in furtherance of a *qui tam* action under the FCA, but all actions under the FCA.  For these reasons Mann has failed to establish that he engaged in protected activity, and, therefore, cannot state a retaliation claim under Subsection (h) of the FCA.

    **A.**    **Mann's Internal Complaint About The Secret Service Contract Bid Could Not Reasonably Have Led To A Viable False Claims Action And Therefore Does Not Qualify As A Protected Act.**

Mann contends in his opposition that his internal complaint about HKD's conduct in connection with the Secret Service contract bid reasonably could have led to the filing of a *qui tam* action and therefore constitutes protected activity under the FCA.  He first argues that his alleged investigation into what he suspected were violations of the FAR by HKD could have reasonably led to a *qui tam* suit.  He then argues that his alleged reports to HKD management of his suspicions that HKD might have been attempting to secure a government contract with the Secret Service through false representations also could have led to a *qui tam* suit.  Both arguments miss the point.  The fatal flaw in Mann's position is that Mann does not allege any facts that, if credited by the Court, would establish that he had any reasonable basis for believing that HKD had made a claim for payment to the government or that the government had made any payment to HKD.  The essential element of any viable *qui tam* claim under the FCA is a false or fraudulent claim for payment made by a person or entity to the federal government.  Mann's

failure (and inability) to allege that HKD had made any actual claim for payment to the government in connection with the Secret Service contract bid is therefore fatal to his FCA retaliation claim set forth in Count I of the Amended Complaint.

Mann argues at length that to establish that he engaged in protected activity under Subsection (h), he need not allege that HKD actually violated the FCA or that he "discovered a completed case." These arguments are irrelevant. Mann must plead sufficient facts to establish that his allegedly protected activity "reasonably could lead to a viable FCA action." *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 866-68 (4th Cir. 1999). It is in this regard that the Amended Complaint is defective; while he has alleged that he suspected that HKD engaged in some fraudulent activity, Mann has failed to allege any facts that, if credited by the Court, would establish that there was any reasonable basis for a belief that HKD made any fraudulent claims for payment to the government.

The Supreme Court has cautioned that the FCA was not designed to punish every type of fraud committed on the government. *See United States v. McNinch,* 356 U.S. 595, 599, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958). For a false statement to be actionable under the FCA, it must constitute a "false or fraudulent claim." As the Fourth Circuit has made clear:

> The test for False Claims Act liability distilled from the statute and the sources discussed above is (1) whether there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) ***that caused the government to pay out money or to forfeit moneys due (i.e., that involved a "claim")***.

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 788 (4th Cir. 1999) (emphasis added). And, in *Eberhardt*, a case on which Mann relies extensively in his opposition, the Fourth Circuit made clear that to qualify as protected activity, an "investigation must concern 'false or fraudulent' claims" and that:

> It would not be enough to [s]imply report [the] concern of a mischarging to the government to [one's] supervisor, nor would it be enough to investigate nothing more than [the] employer's non-compliance with federal or state regulations.

*Eberhardt*, 167 F.3d at 868 (*internal quotations and citations omitted*).

It is for this reason that the Third Circuit held in *Dookeran* that an employee who reports suspected fraud in connection with an application by a government contractor that is simply the first step in a process that ultimately might lead, but in actuality does not lead, to the authorization of payment of federal funds has not engaged in protected activity under Subsection (h). The Third Circuit expressly noted that in the absence of any allegation of a claim for payment by the contractor who is alleged to have committed the fraud on the government, there is no possibility that an employee of the contractor who reports the suspected fraud could file a viable FCA action. *Dookeran v. Mercy Hospital of Pittsburgh*, 281 F.3d 105, 109 (2002). The Third Circuit therefore held that the employee's reports did not constitute activity taken "in furtherance of" an FCA action as required to establish that the employee engaged in protected activity under Subsection (h). *Id.*

Mann argues that *Dookeran* is inapposite "because, contrary to Defendants' description of the case, the plaintiff in *Dookeran* did not disclose fraud in a hospital's 'application for funding.'" Plaintiff's Opposition, at 13. The Third Circuit describes the application at issue as follows:

> Dr. Howard Zaren, the director of MCI, asked Dookeran to author a grant application for MCI to be designated as a clinical center for the National Surgical Adjuvant Breast and Bowel Project's ("NSABP") study comparing the effectiveness of tamoxifen and roloxifene in reducing the incidence of breast cancer in menopausal women.

*Dookeran*, 281 F.3d at 107. The description of the application as a "grant application" makes clear that the application's purpose was to lead to federal funding for the hospital's study.

5

Although the application itself did not expressly demand that federal funds be paid to the hospital, that fact does not distinguish *Dookeran* from this case. The dispositive fact in *Dookeran* was that the application was merely the first step in a process that could have led to the payment of federal funds to the hospital, but that in fact did not result in any such payments. *Id.,* at 109. Similarly here, the contract bid that HKD submitted to the government was not a demand for payment of federal funds. For HKD to demand payment of federal funds, the government first would have had to have accepted HKD's bid and HKD then would have had to have produced the guns required under the contract. In other words, HKD's contract bid was simply the first step in a process that could ultimately have led, but in fact did not lead, to a contract between HKD and the Secret Service that would have allowed HKD to make demands for payment from the government. Both *Dookeran* and this case involve an employee who reported suspected wrongdoing by his employer in connection with the employer's ultimately unsuccessful efforts to enter a contractual relationship with the government that would have allowed the employer to make a claim for payment at a later date. In both situations, however, the employer never made any claim for payment. In both cases there was no possibility that the employee could file a viable FCA action against his employer and any investigation into or reports of the alleged wrongdoing could not have been taken "in furtherance of" a *qui tam* action, as required to constitute "protected activity" under the whistleblower section of the FCA. *Dookeran*, 281 F.3d at 109.

Mann attempts to circumvent *Dookeran* by raising two additional arguments. First, he argues that he need not allege that HKD submitted a false claim in order to plead an FCA retaliation claim. Second, he argues that because the FCA "prohibits material misrepresentations made to qualify for government privileges or services" (Plaintiff's Opposition, at 9-10), his

internal complaint about the HKD's Secret Service contract bid could have reasonably led to a viable FCA claim and therefore was protected activity under Subsection (h). Both arguments lack merit.

Mann is correct that, in *Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson,* the Supreme Court stated (in *dicta*) that "even a well-pleaded retaliation complaint need not allege that the defendant submitted a false claim[.]" But the sentence immediately following that statement makes clear that the Supreme Court simply meant that it is not necessary for an FCA retaliation plaintiff to allege that the defendant actually violated the FCA in order to state a claim of retaliation. In particular, the Supreme Court stated:

> A retaliation plaintiff, instead, need prove only that the defendant retaliated against him for engaging in 'lawful acts done … in furtherance of' an FCA 'action filed or to be filed,' § 3730 (h), language that protects an employee's conduct even if the target of an investigation or action to be filed was innocent.

*Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 416, 125 S.Ct. 2444, 2449, 162 L.Ed.2d 390 (2005). That language clarifies that the Supreme Court's *dicta* in *Graham County* simply noted that proof of an actual FCA violation is not a prerequisite to a valid FCA retaliation claim. Nor is there any merit to Mann's contention that *Graham County's dicta* is in conflict with *Dookeran*'s holding. Those cases dealt with two distinct issues. *Graham County* addressed the question of the appropriate statute of limitations for FCA retaliation claims. *Dookeran,* on the other hand, addressed the question of what allegations are necessary to properly plead that a plaintiff has engaged in lawful acts in furtherance of a *qui tam* suit. Therefore, Mann's reliance on *Graham County* is unavailing.

Mann's argument that internal complaints about alleged fraudulent representations in the contract procurement process are protected acts under Subsection (h) is also unavailing. While it is true that in some limited circumstances a viable FCA action may be maintained based on

material misrepresentations made in order to secure a government contract, in all such cases the misrepresentations must actually induce the government to enter the contract or induce the government to make payments to the entity that made the misrepresentations. In fact, the *Kellogg Brown & Root*, *Lockheed Martin*, and *North American Construction* cases that Mann cites in his opposition all involved situations where the government either actually entered the contract with the party making the alleged misrepresentations or made payments to that party on the basis of the misrepresentations. *United States ex rel. Wilson v. Kellogg Brown & Root, Incorporated*, 525 F.3d 370, 376 (4th Cir. 2008); *United States ex rel. Laird v. Lockheed Martin Engineering & Science Services Co.*, 491 F.3d 254, 258 (5th Cir. 2007); *United States ex rel. Wilkins v. North American Construction Corporation*, 173 F.Supp.2d 601, 631-32 (S.D.Tex. 2001). Furthermore, the *Kellog Brown & Root* case expressly stated that:

> in order to prove a fraudulent inducement claim, a plaintiff must demonstrate that (1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) ***that cause the government to pay out money or to forfeit moneys due (i.e., that involved a 'claim')***.

*Kellog Brown & Root*, 525 F.3d at 376. All three of the above mentioned cases recognize that there must be a claim for payment in order for a plaintiff to establish a viable FCA claim even under a fraud in the inducement theory. Again, because Mann does not allege that HKD ever made any claim for payment to the government, he cannot establish that his alleged investigation or reports regarding the Secret Service contract bid were actions taken in furtherance of a viable *qui tam* lawsuit.

Ultimately, Mann's internal complaint about HKD's suspected wrongdoing solely concerned his suspicions that HKD had failed to comply with federal regulations related to the contracting process. As the Fourth Circuit has made clear, it is not enough to simply "investigate

'nothing more than the employer's non-compliance with federal or state regulations.'" *Eberhardt*, 167 F.3d at 868. Instead, the investigation must concern false claims for payment from the government. *Id.* Although Mann attempts to avoid this fact by arguing that he informed HKD that he thought its alleged conduct was "fraudulent," he has not made any allegation that would establish that the alleged fraud related to a claim for payment from the government. As the Seventh Circuit has explained, simply characterizing conduct as "illegal," "improper," and "fraudulent" in a report is not sufficient to make the report a protected act. *Brandon v. Anesthesia & Pain Mgmt. Assoc., Ltd.*, 277 F.3d 936, 944-45 (7th Cir. 2002).

### B. Mann Has Failed To Establish That His Original FCA Retaliation Complaint Constitutes Protected Activity Under Subsection (h) Of The FCA.

Mann argues in his opposition that the FCA's plain language supports a reading of Subsection (h) that would include the filing of an FCA retaliation claim within the scope of protected activity under that subsection of the statute. In so arguing, Mann focuses on the portion of Subsection (h) that identifies "investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section" as examples of protected acts. Mann argues that the plain language of that portion of Subsection (h) establishes that the statute's retaliation protections extend not only to those who take acts in furtherance of *qui tam* actions, but also to those who file FCA retaliation claims. Mann's argument fails for the following reasons.

Mann's assertion that the language of Section 3730 unambiguously supports his interpretation of the statute is flatly contradicted by *Graham County*, a Supreme Court case on which Mann relies elsewhere in his opposition. *Graham County* involved the interpretation of the limitations provisions of Section 3731 as they applied to Subsection (h) retaliation claims. In addressing that issue, the Court analyzed the statutory language of Section 3731(b)(1), which

provides that "a civil action under section 3730 may not be brought more than 6 years after the date on which the violation of section 3729 is committed." 31 U.S.C. § 3731(b)(1). The Court expressly held that "§ 3731(b)(1) is ambiguous about whether 'action under section 3730' means all actions under § 3730, or only §§ 3730(a) and (b) actions." *Graham County*, 545 U.S. at 416. The language of Section 3731(b)(1) analyzed by the Supreme Court in *Graham County* ("action under section 3730") is substantively identical to the language of Section 3730(h) at issue here ("investigation for, initiation of, testimony for, or assistance in ***an action filed or to be filed under this section***") (emphasis added). Mann's assertion that the plain language of Subsection (h) unambiguously supports his reading of the statute is therefore false.

In any event, the Fourth Circuit's ruling in *Zahodnick* resolves any ambiguity in Subsection (h). In that case, the Fourth Circuit made clear that to plead and prove protected activity, the plaintiff must establish that "he took acts in furtherance of a *qui tam* suit." *Zahodnick*, 135 F.3d at 914. A *qui tam* action is as "an action brought under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive." *Black's Law Dictionary*, (8th Ed., 2004). A retaliation action is categorically distinct from a *qui tam* action. Unlike the *qui tam* plaintiff, who sues in the name of the government or a public institution and seeks recovery, at least in part, on behalf of the government or the public institution, a retaliation plaintiff, such as Mann, sues based on an alleged harm to himself personally and seeks recovery only for himself. The natural implication of *Zahodnick*, therefore, is that acts taken in furtherance of an FCA retaliation claim are not protected under Subsection (h).

Mann attempts to support his broad reading of protected activity by citing *Causey v. Balog* and *Blizzard v. Newport News Redevelopment & Housing Authority*, two Title VII cases

10

that held that the filing of a charge under the substantive anti-discrimination provisions of Title VII and the ADEA is a protected act. Those cases are inapposite. Neither case held that the filing of a retaliation claim under Title VII can support a retaliation claim under the same statute. Rather, those cases addressed situations where the plaintiffs had filed claims under the substantive anti-discrimination provisions of Title VII and then been subjected to adverse action for having done so. Those cases are more analogous to a situation where an FCA plaintiff files a retaliation claim after being subjected to adverse employment action for having filed a *qui tam* claim under the FCA. That is not the case here. This case involves a plaintiff who never filed a claim under the FCA's substantive *qui tam* provisions but instead attempts to base a retaliation claim on his allegation that he was subjected to adverse employment action after filing an earlier FCA retaliation claim. Accordingly *Causey v. Balog* and *Blizzard v. Newport News Redevelopment & Housing Authority* are inapplicable.

Mann further attempts to support his broad reading of protected activity by citing dicta from *Tennessee Valley Authority v. Frady*, an unpublished opinion from the Sixth Circuit that noted that the whistleblower provisions of the Energy Reorganization Act ("ERA") protect the filing of a charge of retaliation under the ERA. *Frady*, 134 F.3d 372, n.1. (6th Cir. 1998). That decision, however, is not controlling authority. In any event, *Zahodnick* makes clear that the Fourth Circuit has construed the FCA's anti-retaliation provisions more narrowly than the ERA's.

II. **Mann Has Failed To Demonstrate That The Allegedly Defamatory Words On Which Count III Of The Amended Complaint Is Based Were False.**

Mann concedes in his opposition that his defamation claim against HKD (Count III) is based on his assertion that "HKD falsely portrayed Mann as the subject of an internal investigation to HKD staff and customers." Plaintiff's Opposition, at 16. The communication

11

on which this claim is based is an e-mail stating that "You may or may not be aware of what occurred last week, but in the event that you are not, here is a brief update. Jason Mann has been placed on administrative leave as of April 9th, pending an internal investigation." Plaintiff's Opposition, at 17 (*quoting* Complaint, at ¶¶61, 105). Mann does not deny that the statements in this allegedly defamatory communication are entirely consistent with Mann's allegations in his own pleading (paragraphs 50, 51, 52, and 59 of the Amended Complaint) that HKD conducted an internal investigation of his allegations regarding the Secret Service contract bid and that he was told to go home and not return to work until called back. He therefore does not deny that the statement in the alleged April 14, 2008 e-mail itself is not false. Instead, he asks that the Court infer a defamatory meaning to the statement. Specifically, he contends that the Court should infer that the statement falsely suggested that Mann himself was the subject of the internal investigation. Under the doctrine of libel by implication of true fact, however, the statement clearly is not defamatory.

Virginia courts recognize the doctrine of libel by implication of true facts. *See Lamb v. Weiss*, 62 Va. Cir. 259, 2003 WL 23162338, at *2 (Winchester Cir. June 9, 2003) (*quoting White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990)). Under this doctrine:

> [I]f a communication, viewed in its entire context, merely conveys materially true facts from which a defamatory inference can reasonably be drawn, the libel is not established. But if the communication, by the particular manner or language in which the true facts are conveyed, supplies additional, affirmative evidence suggesting that the defendant *intends* or *endorses* the defamatory inference, the communication will be deemed capable of bearing that meaning.

*White*, 909 F.2d at 520.

Here, there is nothing in the e-mail that, if Mann's allegations are credited, would establish that HKD intended or endorsed any defamatory inference about Mann. According to the Amended Complaint, on April 10, 2008, Newton sent an e-mail to HKD employees stating

12

that "there may be an issue related to a recent bid to the Secret Service," and that "Newton informed HKD employees that HKD had retained outside legal counsel to conduct an internal investigation." Amended Complaint, at ¶52. Mann contends that later that same day he was ordered to stay home until called back to work. Amended Complaint, at ¶59. The e-mail at issue was sent only four days later and simply referred to the facts that Mann was out of the office on administrative leave and that an internal investigation of the Secret Service contract bid was underway. Furthermore, Mann does not allege that any additional words were published by HKD that accused him of any wrongdoing or provided any specifics regarding the reason he was placed on administrative leave.[1] In light of the allegations in his own pleading, Mann's reading of the allegedly defamatory e-mail strains beyond reason the meaning of the language contained in that communication. The e-mail did not, either by the particular manner or language in which it conveyed the true facts about Mann's administrative leave and the ongoing internal investigation into the Secret Service contract bid, supply affirmative evidence that HKD intended or endorsed any defamatory inferences from the statement. Accordingly, based on the facts alleged in the Amended Complaint, the statements in the e-mail were not defamatory and cannot support Mann's defamation claim against HKD.

---

[1] Nor is it reasonable to infer from the fact that Mann was on administrative leave that he had done anything wrong. Employers may place employees on administrative leave for a variety of reasons that have nothing to do with employee misconduct. Nor does the fact that Mann was placed on administrative leave while his allegations regarding the Secret Service contract bid were being investigated imply that he necessarily engaged in any misconduct. It is not uncommon for employers to place employees who raise allegations of discrimination or other wrongdoing on paid administrative leave to ensure that the integrity of the investigation is maintained and that the employee is not subjected to any harassment or pressure from supervisors or co-workers while the investigation is underway.

### III. By Failing To Allege The Exact Words That He Claims Are Defamatory, Mann Has Failed To Plead An Essential Element Of A Claim Of Defamation Under Virginia Law.

Mann's opposition fails to address this Court's decision in *Gibson v. Boy Scouts of America* or the Virginia Supreme Court decision in *Federal Land Bank of Baltimore v. Birchfield*, both of which held that it is an essential element of a defamation claim under Virginia law that a plaintiff plead and prove the exact words on which the claim is based. Instead, Mann relies on this Court's recent unpublished decision in *Harrington v. Sprint Nextel Corp.*, No. 1:08CV336, slip op. at 5 (E.D.Va. May 29, 2008) (Cacheris, J.) and the Fourth Circuit's unpublished decision in *Southprint, Inc. v. H3, Inc.*, 208 Fed. Appx. 249, 254 n.2 (4th Cir. 2006). But neither *Harrington* nor *Southprint* addresses the holdings in *Gibson* or *Federal Land Bank*.[2] Rather, they simply applied the liberal pleading standards of Rule 8 of the Federal Rules of Civil Procedure to the defamation claims at issue. This Court and the Fourth Circuit erred in that respect.

*Federal Land Bank of Baltimore* establishes that the requirement that a plaintiff allege the exact words that he claims are defamatory is not simply a pleading requirement, but an essential element of a claim of defamation. *Federal Land Bank*, 173 Va. 200, 215, 3 S.E.2d 405, 410 (1939). Specifically, the Virginia Supreme Court noted:

> the pleading must go further, - that is it must purport to give the exact words. Not only must the exact words be charged, but they must be proven or at least a sufficient number proven to make out a good cause of action. Words equivalent or of similar import are not sufficient. They must be substantially proven as alleged.

---

[2] The other case that Mann cites in support of his argument that he need not plead and prove the exact words that he claims are defamatory, *Hatfill v. N.Y. Times Co.*, 416 F.3d 329 (4th Cir. 2005), also fails to address the holdings of *Gibson* and *Federal Land Bank*.

14

*Id.* The requirement that alleged defamatory words be substantially proven as alleged cannot be met if the exact words on which a defamation claim is based are not set forth in the pleading. Accordingly, under Virginia law, Mann cannot state a claim of defamation without alleging the exact words that he claims were defamatory. Because he has not done so (except with regard to the e-mail), his defamation claims must be dismissed.

## CONCLUSION

For the reasons set forth above and in Defendants' original memorandum of points and authorities in support of their motion to dismiss, Defendants respectfully request that the Court dismiss Mann's Amended Complaint in its entirety.

Dated: September 8, 2008                    Respectfully submitted,

/s/
John Scalia
VSB No. 46444
Matthew Sorensen
VSB No. 65970
Virginia E. Robinson
VSB No. 71411
GREENBERG TRAURIG, LLP
*Attorneys for Defendants Heckler & Koch GmbH and Heckler & Koch Defense, Inc.*
1750 Tysons Blvd., Suite 1200
McLean, VA 22102
Tel: (703) 749-1300
Fax: (703) 749-1301
scaliaj@gtlaw.com
sorensenm@gtlaw.com
robinsonv@gtlaw.com

Mark L. Hogge
VSB No. 23946
GREENBERG TRAURIG, LLP
*Attorney for Defendants Heckler & Koch GmbH and Heckler & Koch Defense, Inc.*
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
Tel: (202) 530-8591
Fax: (202) 331-3101
hoggem@gtlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2008, I filed a copy of the foregoing Reply Memorandum In Support of Defendants' Motion to Dismiss on the Court's ECF system and that service was thereby accomplished on:

> R. Scott Oswald, Esq.
> Jason M. Zuckerman
> The Employment Law Group, P.C.
> *Attorneys for Plaintiff Jason Mann*
> 888 17th St NW, Suite 900
> Washington, DC 20006
> Tel:  (202) 261-2806
> soswald@employmentlawgroup.net
> jzuckerman@employmentlawgroup.net

>                    /s/
> Matthew Sorensen
> VSB No. 65970
> GREENBERG TRAURIG, LLP
> *Attorneys for Defendants Heckler & Koch GmbH*
> *and Heckler & Koch Defense, Inc.*
> 1750 Tysons Blvd., Suite 1200
> McLean, VA 22102
> Tel:  (703) 749-1300
> Fax: (703) 749-1301
> sorensenm@gtlaw.com