IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
                              )
JASON MANN,                   )
                              )
      Plaintiff,              )
                              )
            v.                )      1:08cv611 (JCC)
                              )
HECKLER & KOCH DEFENSE, INC., )
                              )
      Defendant.              )
```

## M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendants Heckler &
Koch Defense, Inc. (HKD) and Heckler & Koch GmbH's (HKGmbH)
(collectively, Defendants) Motion to Dismiss the Complaint
brought by Plaintiff Jason Mann (Plaintiff).  For the following
reasons, the Court will **grant** Defendants' Motion to Dismiss as to
Count II and **deny** the motion with respect to the remaining
counts.

### I. Background

The facts as alleged in Plaintiff's Complaint are as
follows.  In December 2007, HKD received a Request for Proposal
(RFP) from the United States Secret Service (Secret Service)
seeking a contract bid to supply it with rifles with ambidextrous
selector levers (ambi-levers).  The RFP required HKD to submit
both a bid and sample guns by February 29, 2008.  HKD began the

1

process to submit its bid in response.  Prior to the RFP, HKD had designed rifles with ambi-levers, however, it realized that they would not be available by the bid deadline.  Wayne Weber (Weber), Mann's direct supervisor, purchased aftermarket ambi-levers to be installed on HDK's sample guns.  When the aftermarket ambi-levers were found to fit loosely, not work reliably, and not meet HKD's quality standards or the requirements of the RFP, HKD submitted its bid and sample guns without ambi-levers on February 25, 2008.

On March 3, 2008, Mann's direct subordinate, Robbie Reidsma (Reidsma), at Weber's instruction, delivered aftermarket ambi-levers for the sample guns to a Secret Service Officer in a Maryland parking lot.  During this delivery, the Officer warned Reidsma: "Please do not tell anyone you came here with these or we could both lose our jobs."

Mann heard about the exchange the following day and believed that Weber and Reidsma's actions violated government contracting protocols, namely the Federal Acquisition Regulations (FAR).  Because Weber had explicitly forbidden Mann from contacting anyone above Weber at HKD, Mann contacted HKD's former President, Brian Marvin (Marvin).  Marvin told Mann that the submission of the ambi-levers was a violation of FAR.  Mann further independently researched the FAR and came to believe that the exchange violated several sections of FAR Parts 12 (Acquisitions of Commercial Items) and 15.2 (Solicitation and

Receipt of Proposals and Information), as well as the Procurement Integrity Act, 41 U.S.C. §423.  Mann believed that HKD attempted to fraudulently induce the Secret Service into awarding the contract to HKD by falsely representing that the rifles, with aftermarket ambi-levers, conformed to the RFP's specifications.

Based on these discoveries, Mann reported his concerns to Weber and Rob Tarter, HKD's Manager of Military Sales (Tarter), and separately to John Aliveto (Aliveto), HKD's Director of Business Development, who conveyed the allegations to Judy Cox (Cox), HKD's Controller, and Roz Weaving (Weaving), HKD's Human Resources Manager.  These individuals then informed Martin Newton  (Newton), the President of HKD and CEO of HKGmbH, of Mann's allegations.

HKD conducted an investigation into Mann's allegations, during which Mann and other HKD employees provided written statements, which they were forbidden to print out or copy.  On the evening of April 10, 2008, Mann argued with Weber concerning the allegations and, at the conclusion of the argument, Weber instructed Mann to stay home for the rest of the week and not to come to work until called back.

On April 14, 2008, Weber sent an e-mail to HKD employees stating: "You may or may not be aware of what occurred last week, but in the event that you are not, here is a brief update.  Jason Mann has been placed on administrative leave as of

3

April 9th, pending an internal investigation." When Mann contacted Newton about the email, Newton informed Mann that Mann was not under investigation and that Weber's e-mail should not have been sent. Mann returned to work the week of May 5, but was hindered and harassed while trying to perform his duties. In May 2008, the Secret Service cancelled the RFP for HK-416 rifles with ambi-levers.

About this time, Niels Ihloff, an employee of HKGmbH, told Marvin that Mann was a bad employee and was under investigation, questioned Mann's mental stability, and stated that, during his prior employment as a police officer, Mann had shot and killed a man under questionable circumstances.

On June 11, 2008, Mann filed his original complaint against Defendants in the United States District Court for the Eastern District of Virginia, alleging one False Claims Act (FCA) violation, under 31 U.S.C. § 3730(h), and one state-law defamation claim. On June 24, 2008, Mann was informed that he was under investigation for his conduct pertaining to an unrelated sale of weapons to a police department. He was suspended without pay pending the outcome of the investigation. On July 17, 2008, Newton notified Mann that, effective immediately, HKD had terminated his employment.

On July 18, 2008, Mann filed an Amended Complaint (Complaint), with additional causes of action based on the

4

additional retaliation he experienced after filing his original complaint.  In this Complaint, Mann alleges violations of the FCA, 31 U.S.C. § 3730(h), stemming from retaliation against him for presenting his allegations to HDK and HKGmbH officers (Count I) and for filing the original complaint in this action (Count II).  Mann also brings two defamation claims: for Weber's (Count III) and Ihloff's (Count IV) false and defamatory statements.

Plaintiff prayed for numerous damages, including reinstatement or front pay, economic damages for lost wages and benefits, compensatory damages for emotional distress, loss of reputation, punitive damages, injunctive relief to prevent further harm to the public, and reasonable attorney's fees and costs.

Defendants filed a Motion to Dismiss on August 22, 2008.  Plaintiff responded on September 2, 2008 with a Memorandum in Opposition and Defendants filed a Reply Memorandum in Support on September 8, 2008.  This matter is currently before the Court.

## II.  Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), and should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991)

(citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.* In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Nevertheless, while Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).

### III. Analysis

Defendants put forth two main arguments in support of their Motion to Dismiss. First, Defendants argue that Counts I and II fail because the Complaint "fail[s] to allege that Mann engaged in any protected activity under the FCA." Defs.' Mot. to Dismiss at 2. Second, Defendants argue that Counts III and IV fail because Mann did not allege the defamatory statements "with the degree of particularity required under Virginia law." *Id.* at 3. The Court will address each of Plaintiff's claims in turn.

6

A.   <u>FCA Claims under 31 U.S.C. § 3730(h)</u>

The FCA creates civil liability for "[a]ny person who knowingly" presents, makes, or uses "a false or fraudulent claim for payment or approval by the Government." 31 U.S.C. § 3729(a)(1)-(7). A claim under the FCA may be brought by the government, or by an individual in a *qui tam* action. 31 U.S.C. § 3730(h). Section 3730 (Civil Actions for False Claims), under which this action is brought, provides that:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h).

Plaintiff's Complaint alleges two types of protected activity: his investigation and complaints to Defendants, and his filing of a civil suit in this Court against Defendants for retaliation and defamation. He does not allege that Defendants submitted a claim for payment or approval by the Government in connection with the RFP for rifles with ambi-levers.

To prove that an employer retaliated against an employee in violation of 31 U.S.C. § 3730(h), an employee must "prove that (1) he took acts in furtherance of a *qui tam* suit

7

[i.e. engaged in 'protected activity']; (2) his employer knew of these acts; and (3) his employer discharged him as a result of these acts." *Zahodnick v. Int'l Bus. Mach. Corp.*, 135 F.3d 911, 914 (4th Cir. 1997).

Defendants argue that Counts I and II should be dismissed because Plaintiff did not engage in activity "in furtherance of an action under this section [§ 3730(h)]". Defs.' Mot. to Dismiss at 7-8. Plaintiff did not file or testify in a *qui tam* lawsuit, nor did he act "in a situation where a *qui tam* action is a distinct possibility or the litigation could be filed . . . consistently with [Rule] 11." *Id.* at 8 (citing *Neal v. Honeywell*, 33 F.3d 860, 864 (7th Cir. 1994) (internal quotations omitted)).

1.   Protected Activity Under Count I

Defendants argue that Plaintiff's internal investigation and complaints did not relate to a *qui tam* action, but rather to "ensuring HKD's compliance" with Plaintiff's "own understanding of federal laws and regulations" governing contract bids. Defs.' Mot. to Dismiss at 12 (citing *Dookeran v. Mercy Hosp. of Pittsburgh*, 281 F.3d 105, 109 (3d Cir. 2002); *Brandon v. Anesthesia & Pain Mgmt. Assoc., Ltd.,* 277 F.3d 936 (7th Cir. 2002); *Zahodnick*, 135 F.3d 911). Defendants also believe that Plaintiff's original complaint for retaliation is not protected by § 3730(h). While no court has addressed this issue,

8

Defendants submit that the legislative history clearly shows that subsection (h)'s protections were only meant to apply to employees who report fraudulent claims to the federal government. Defs.' Mot. to Dismiss at 13.

Plaintiff argues that the Court should construe "protected activity" broadly.  Defs.' Mot. to Dismiss at 13 (citing *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 866-68 (4th Cir. 1999); S. Rep. No. 99-345, at 34 (1986) ("[T]he committee believes protection should extend not only to actual *qui tam* litigants, but to those who assist or testify for a litigant, as well as those who assist the government in bringing a false claims action.  Protected activity should therefore be interpreted broadly.")).  Plaintiff also submits that FCA retaliation claims need only satisfy Rule 8(a)'s notice pleading standard, not the heightened requirements of Rule 9. *Id.* at 7 (citing *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Rule 9(b)'s heightened pleading requirements do not apply to FCA retaliation claims.")).

Plaintiff asserts that his investigatory actions were "protected activity" for three reasons: (1) he investigated matters which could reasonably lead to a viable FCA action and he pled this investigation in detail; (2) his actions "put HKD on notice that a *qui tam* action was 'a distinct possibility'"; and (3) his disclosures to management led to an internal

9

investigation of fraud on the government.  Pl.'s Mem. in Opp'n at 10.  Plaintiff believes that initiating the current action was also "protected activity" because "[f]iling an FCA retaliation claim is one of the options offered by the FCA."  *Id.* at 12.

To support this argument, Plaintiff relies on the legislative history of the FCA, S. Rep. 99-345, at 34 (1986) ("protected activity . . . includes any good faith exercise of an individual . . . of any option offered by this Act, including . . . an action filed or to be filed under this act"), and the construction of the eight federal whistleblower protection provisions on which § 3730 is modeled, S. Rep. 99-345, at 34 (1986).  He also notes that "[i]t is well established that under Title VII's retaliation provision, filing a discrimination complaint constitutes protected conduct."  *Id.* (citing *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998)).  And he cites to "'the almost uniform practice of courts [to consider] . . . Title VII case law when interpreting the comparable provisions of other federal statutes.'"  Pl.'s Mem. at 12 (quoting *Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th Cir. 2008) (interpreting the retaliation provision of the Fair Labor Standards Act); *see also McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 357-61 (1995) (interpreting the Age Discrimination in Employment Act)).

The Court acknowledges that there appears to be some disagreement among the circuits regarding what constitutes "protected activity" under 31 U.S.C. § 3730(h).  On this issue, the Court follows the position taken by the Fourth, Seventh, and District of Columbia Circuits.  *See Eberhardt*, 167 F.3d at 866-68 (citing *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 740 (D.C. Cir. 1998)) (citing *Neal v. Honeywell*, 33 F.3d 860, 864 (7th Cir. 1994))).

In *Eberhardt*, the Fourth Circuit held that "an employee tasked with the internal investigation of fraud against the government" cannot bring a § 3730(h) action unless he puts the employer on notice that a *qui tam* suit "is a reasonable possibility."  167 F.3d at 868.  While this action differs from *Eberhardt* in that it does not appear that Plaintiff was "tasked with the internal investigation of fraud," the standard remains relevant and, if anything, implies that Plaintiff would need to meet a less demanding standard, not a higher one.  *See id.* (raising concerns about notice "when an employee's actions are consistent with his job duties").  In *Eberhardt*, the court found that the notice requirement could be satisfied by, among other things, "characterizing the employer's conduct as illegal or fraudulent."  *Id.*  Plaintiff's Complaint alleges that he "expressed to Weber his belief that it was fraudulent for HKD to

11

deliver the ambi-levers after the bid submission deadline." Pl.'s Am. Compl. at ¶ 42.

In response, Defendants point to *Zahodnick*, an earlier Fourth Circuit case, in which the court found that an employee who "merely informed a supervisor of the problem and sought confirmation that a correction was made" had not established "protected activity."  135 F.3d at 914.  In this case, however, Plaintiff did not merely "inform a supervisor," on the contrary, he went outside of the explicit chain of command, informed *on* his supervisor to a number of officers and directors, and even took his concerns outside the company.

Defendants also argue that Plaintiff did not engage in "protected activity" because Defendants did not actually violate 31 U.S.C. § 3729, since their alleged fraud never led to the authorization of payment of federal funds to Defendants.  Defs.' Mot. to Dismiss at 8-9.  The Supreme Court has specifically noted that "proving a violation of § 3729 is not an element of a § 3730(h) cause of action."  *Graham County Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 416 n.1 (2005) (citing *Yesudian*, 153 F.3d at 740).  For these two reasons, Plaintiff has successfully pled "protected activity" under the FCA in Count I.

12

2.   <u>Protected Activity Under Count II</u>

In Count II, the "protected activity" Plaintiff pleads is filing a complaint for retaliation under 31 U.S.C. § 3730(h). The text of § 3730(h) protects "lawful acts done . . . in furtherance of an action under this section." 31 U.S.C. § 3730(h). This language is ambiguous regarding whether "action under this section" includes all actions brought under § 3730 or only those under §§ 3730(a) (Actions by the Attorney General) and (b) (Actions by private persons). The Supreme Court has addressed an identical ambiguity created by § 3731 with respect to the limitations period for § 3730(h) actions. *Graham County Soil*, 545 U.S. at 415-16. The Court held that the limitations period governed "only §§ 3730(a) and (b) actions, and not § 3730(h) retaliation actions" for two reasons. *Id.* at 417. The first was that the same ambiguous phrase to refers only to §§ 3730(a) and (b) actions in "the very next subsection of the statute." *Id.* at 417-18. Second, the Court wanted to follow the default rule regarding statues of limitations. *Id.* at 418.

In § 3730, the nearby subsection (f) uses similarly ambiguous language; however, it is not clear whether it also refers to actions under subsection (h). 31 U.S.C. § 3730(f) ("The Government is not liable for expenses which a person incurs in bringing an action under this section."). Second, while there is no explicit "default rule" for interpreting whistleblower

13

protection provisions, Plaintiff advocates interpreting the FCA in light of relevant Title VII case law.  Pl.'s Mem. in Opp'n. at 12.

In *Causey v. Balog*, 162 F.3d 795, 799, 803 (4th Cir. 1998), the Fourth Circuit found that filing a complaint for race and age discrimination with the Equal Opportunity Office (EOO) was "protected conduct" under Title VII's whistleblower provision.  However, filing an EOO complaint for discrimination is more akin to reporting a false claim made on the government, under § 3730(b), than to filing a claim under § 3730(h) for retaliation suffered as a result of reporting a false claim. Plaintiff's argument appears to advocate Defendants' position more clearly than its own.  The Court interprets § 3730(h)'s "action filed or to be filed under this section" language to refer only to claims under §§ 3730(a) and (b), not to claims under subsection (h) itself.  Plaintiff's act of filing a complaint under 31 U.S.C. § 3730(h) is not a "protected activity" within that section.  Count II of the Complaint will be dismissed.

B.    Defamation Claims under Common Law

In Virginia, whether a statement is capable of being defamatory is question of law.  *See Yeagle v. Collegiate Times*, 497 S.E.2d 136, 138 (Va. 1998).  Words that are per se actionable include, as in the common law, words imputing to a person a

criminal offense of moral turpitude for which the party may be indicted and punished, an unfitness or lack of integrity required to perform official or professional duties, and words "which prejudice such person in his or her profession or trade." *Wells v. Liddy*, 186 F.3d 505, 522 (4th Cir. 1999) (quoting *Carwile v. Richmond Newspapers, Inc.*, 82 S.E.2d 588, 591 (Va. 1954)).

Defendants argue that both of Plaintiff's defamation claims fail because a Virginia defamation action requires "that the exact words spoken or written must be set out in the declaration . . . that is, [the pleading] must purport to give the exact words.  Words equivalent or of similar import are not sufficient."  Defs.' Mot. to Dismiss at 14 (citing *Gibson v. Boy Scouts of America*, 360 F. Supp. 2d 776, 782 (E.D. Va. 2005); *Fed. Land Bank of Baltimore v. Birchfield*, 3 S.E.2d 405, 410 (Va. 1939)).  As Plaintiff does not allege the exact words used by Ihloff in his statements to Martin, Count IV does not state a claim for defamation.

Defendants also argue that "[t]he only allegedly defamatory statement that is set forth in the Amended Complaint with the particularity required under Virginia law is Weber's April 14, 2008 e-mail."  Defs.' Mot. to Dismiss at 14. Defendants object to this statement because the Complaint establishes that this statement was not false, since Mann was

"placed on administrative leave as of April 9th, pending an internal investigation." *Id.*

Defendants further object to Count IV because, while it "appears to be based on a theory of vicarious liability, Mann has not alleged any facts that . . . would establish that HKGmbH is vicariously liable for the alleged defamatory statements." *Id.* at 16. Plaintiff only alleges that Ihloff was an agent of HKGmbH, acting in the course and scope of his employment when he made the statements, a legal conclusion that the Court need not accept as true. *Id.* (citing *Young v. City of Mt. Ranier*, 238 F.3d 567, 577 (4th Cir. 2001)).

Plaintiff responds that "the exact words spoken or written" are not necessary to comply with the governing pleading standard, Fed. R. of Civ. P. 8. Pl.'s Mem. in Opp'n at 14 (citing *Southprint, Inc. v. H3, Inc.*, 208 Fed. Appx. 249, 254 n.2 (4th Cir. 2006); *Harrington v. Sprint Nextel Corp.*, No. 1:08CV336, slip op. at 5 (E.D. Va. May 29, 2008)). Moreover, while Plaintiff agrees that pleading falsity is a necessary element of a *prima facie* defamation case, he submits that his Complaint satisfies this requirement. First, the e-mail portraying Mann as the subject of an internal investigation was clearly identified as false in the Complaint. Defendants have even admitted that "Weber's e-mail implied that Mann was the subject of an internal investigation." *Id.* at 16, 18 (quoting

16

Defs.' Mot. to Dismiss at 15).  Second, the telephone
conversation regarding Mann's mental instability and allegations
that he shot and killed a man under questionable circumstances
obviously involved a criminal offense of moral turpitude and
Plaintiff's "unfitness" to perform his duties.  *Id.* at 16.  Given
that "the meaning of a defamatory statement may come not only
from the actual words used, but also from any 'inferences fairly
attributed to them,'" Plaintiff asserts that he has sufficiently
pled this Count.  *Id.* at 17 (citing *Wells v. Liddy*, 186 F.3d 505,
523 (4th Cir. 1999)).

　　　　With respect to Count IV, Plaintiff also asserts that,
because the Complaint alleged an employer-employee relationship
between Ihloff and HKGmbH, Plaintiff has met his burden, and
HKGmbH has the burden to show that Ihloff was not acting within
the scope of his employment when he defamed Mann.  *Id.* at 18-19
(citing *Kensington Assocs. v. West*, 362 S.E.3d 900, 901 (Va.
1987)).

　　　　The general rule of interpretation is to take allegedly
defamatory words "in their plain and natural meaning . . . as
other people would understand them, and according to the sense in
which they appear to have been used."  *Id.* at 591-92.  A
defamatory charge may be made expressly or by "inference,
implication or insinuation."  *Hatfill v. N.Y. Times Co.*, 416 F.3d
320, 331 (4th Cir. 2005) (quoting *Carwile*, 82 S.E.2d at 592).

17

Accordingly, courts should consider both the allegedly defamatory words and the "inferences fairly attributable" to them.  *Wells*, 186 F.3d at 523.

The Court finds, based on *Carwile*, 82 S.E.2d at 592, that Plaintiff's allegations regarding Weber's e-mail that Plaintiff was under investigation, along with the "inferences fairly attributable" to that allegation, are sufficient to state a claim for defamation.  In addition, the statements allegedly made by Ihloff regarding Plaintiff's mental state and the questionable shooting incident, viewed in light of "their plain and natural meaning," involve three of the four types of common-law defamation per se.  *See Carwile*, 82 S.E.2d at 591.  This allegation was sufficiently alleged in the Complaint.

The Court also finds that Plaintiff has stated a sufficient claim for HKGmbH's vicarious liability.  The Complaint alleged an employment relationship between Defendants and Ihloff, a fact that is deemed admitted for the purposes of a Motion to Dismiss, *see Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  In Virginia, once an employment relationship is established, "the burden is on the employer to prove that the employee was not acting within the scope of his employment when he committed the act."  *Gina Chin & Assocs., Inc. v. First Union Bank*, S.E.2d 573, 577-78 (Va. 2000) (internal quotations omitted).  Plaintiff had no burden to allege any additional facts.

Finally, applying Virginia law, the Fourth Circuit has made it clear that no heightened pleading standard applies to defamation claims. *Hatfill v. N.Y. Times Co.,* 416 F.3d 320, 329 (4th Cir. 2005). "[A] defamation complaint must only provide a 'short and plain' statement of the claim that is sufficient to give the defendant fair notice of the nature of the claim and the grounds upon which it rests." *Southprint, Inc. v. H3, Inc.*, 208 Fed. Appx. 249, 254 n2 (4th Cir. 2006)(citing *Hatfill v. N.Y. Times Co.,* 416 F.3d 320, 329 (4th Cir. 2005); Fed. R. Civ. P. 8(a)(2)). Indeed, the Fourth Circuit has declared it to be error to "appl[y] a stricter standard to [a plaintiff's] complaint than the ordinary standards under Rule 12(b)(6)." *Hatfill*, 416 F.3d at 329-30. The Court finds that Plaintiff's allegations in Count IV meet Rule 8's requirement of a "short and plain statement of the claim" and that no heightened pleading standard applies here. Defendants' Motion will be denied as to Counts III and IV.

## IV.  Conclusion

For these reasons, the Court will **grant** Defendants' Motion to Dismiss Count II and **deny** the motion with respect to the remaining counts.

An appropriate Order will issue.

October 7, 2008                    _____/s/_____
Alexandria, Virginia                        James C. Cacheris
                                  UNITED STATES DISTRICT COURT JUDGE

_____