IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |  |
|---|---|---|
| JASON MANN, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 1:08cv611 (JCC) |
| HECKLER & KOCH DEFENSE, INC. et al., | ) ) ) | |
| Defendants. | ) ) | |

## **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Plaintiff Jason Mann's Motion for Reconsideration.  For the following reasons, the Court will deny the motion.

### **I. Background**

An abbreviated version of the relevant facts follows.  Plaintiff Jason Mann (Mann) was employed by Defendant Heckler & Koch Defense, Inc. (HKD) as its Law Enforcement Sales Manager from April 2, 2007 until July 17, 2008.[1]  On November 23, 2007, the United States Secret Service (Secret Service) published a Request for Proposals (RFP) to procure assault rifles equipped with ambidextrous selector levers (ambi-levers).  An ambi-lever is a device that allows the same rifle to be used by either a

---

[1] On May 5, 2009, in response to a stipulation of dismissal by Plaintiff and Defendant HDK, the Court dismissed a second defendant, Heckler & Koch GmbH, from this action with prejudice.

1

left-handed or a right-handed person.  The RFP required interested parties to submit both a bid and sample rifles by February 29, 2008.

In response to the RFP, HKD offered its model HK416 rifle, which was not equipped with ambi-levers on February 28, 2009.  The written proposal stated that "HK416 ambidextrous selector level item is currently in production and available, however will not be available for the initial delivery date of the test weapons due to import timelines."  Def.'s Mot. for Summ. J., Sorensen Decl. at Ex. 7.  After the RPF closed, Wayne Weber (Weber), Mann's supervisor, purchased after-market ambi-levers from a third-party.  He then directed Robbie Reidsma (Reidsma), one of Mann's subordinates, to hand-deliver them to a Secret Service Officer.  On March 3, 2008, Reidsma did so.

On March 10, 2008, Weber informed Mann about the delivery of the after-market ambi-levers.  Mann expressed his disapproval to Weber, Reidsma, and other people inside and outside of HKD.  HKD conducted a formal investigation into Mann's allegations and placed Mann on administrative leave.  During this time, it restricted his access to email, phone, files, and the HKD office.

Mann instituted this action on June 11, 2008.  He filed an amended complaint (Amended Complaint) on July 18, 2008 stating four claims: retaliation in violation of 31 U.S.C. § 3730(h)

after Mann complained to his superiors about possible fraud on the government (Count I), and again after he filed this action (Count II), and defamation by HKD's employees (Counts III and IV).

In response to Defendants' Motion to Dismiss the Amended Complaint, the Court dismissed Count II on October 7, 2008. It also dismissed Count IV with prejudice on February 10, 2009 in response to the parties' joint request. Defendants moved for summary judgment in their favor on the remaining claims – Counts I and III – on April 8, 2009. The Court granted this motion on July 1, 2009. Plaintiff filed a Motion to Reconsider that decision on July 15, 2009. He also filed a notice of appeal to the Fourth Circuit on July 27, 2009. Defendants opposed the Motion to Reconsider on July 23, 2009; Plaintiff replied on August 3, 2009. Plaintiff's motion is currently before the Court.

## II. Standard of Review

Under Federal Rule of Civil Procedure, 59(e), a party may file a motion to alter or amend a judgment within ten days of the entry of judgment. A district court has "considerable discretion in deciding whether to modify or amend a judgment." *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 241 n.8 (4th Cir. 2008). It is, however, "a remedy to 'be used sparingly.'" *Id. (quoting Pacific Ins. Co. v. Am. Nat'l Fire*

*Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)). A motion to alter or amend a judgment under Rule 59(e) is appropriate on three different grounds: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pacific Ins. Co.*, 148 F.3d at 403 (citations omitted).

### III. Analysis

In this motion, Plaintiff submits that the Court's July 1, 2009 decision to grant Defendant's Motion for Summary Judgment on Counts I and III of the Amended Complaint was incorrect. He has moved the Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e). His arguments relate only to Count I; the Court will thus presume that he seeks reconsideration of only that portion of the Court's decision. Plaintiff fails to identify the bases of his motion. At one point, however, he uses the phrase "manifest injustice." Pl.'s Mot. to Recons. 15. The Court will thus extrapolate that Plaintiff requests review of the judgment to "prevent manifest injustice." *Pacific Ins. Co.*, 148 F.3d at 403. No other basis appears to apply.[2]

---

[2] Plaintiff labels one of the Court's conclusions "clearly erroneous," Pl.'s Mot. to Recons. 13, but the "clear error" standard relates to clear errors of law, *see Pacific Ins. Co.*, 148 F.3d at 403, while Plaintiff refers to a perceived error in the Court's review of the evidence before it. It does not appear from his motion that he argues that the Court made any clear errors of law.

A.   <u>Review of the Law Set Forth in the Memorandum Opinion</u>

For the sake of clarity, the Court will summarize the legal framework that it relied on in its July 1, 2009 decision (Memorandum Opinion). It is well-settled that, to show a violation of 31 U.S.C. § 3730(h), an employee must "prove that (1) he took acts in furtherance of a qui tam suit [i.e. engaged in 'protected activity']; (2) his employer knew of these acts; and (3) his employer discharged him as a result of these acts." Mem. Op. 8 (quoting *Zahodnick v. Int'l Bus. Mach. Corp.*, 135 F.3d 911, 914 (4th Cir. 1997) (brackets in original)). For the purposes of summary judgment, Defendant did not dispute that Plaintiff had established the second and third elements of this standard. Mem. Op. 25-26. The Court thus only evaluated the first element: whether the employee had engaged in "protected activity."

To determine whether Plaintiff had submitted sufficient evidence that he engaged in protected conduct, the Court relied on the Fourth Circuit's somewhat amorphous test of protected activity. Mem. Op. 9. This test instructs that protected activity occurs when litigation is a "distinct possibility," a "reasonable possibility," or the plaintiff's conduct "reasonably could lead to a viable FCA action." Mem. Op. 9 (quoting *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 869 (4th Cir. 1999)). In applying this standard, the Fourth Circuit

has found that an employee's investigation does "not rise to the level of protected activity until the employee uncovered likely fraud, thereby making litigation a reasonable possibility." *Eberhardt v. Integrated Design & Const., Inc.*, 167 F.3d 861, 869 n.2 (4th Cir. 1999).  It has also held that an employee who "specifically characterizes the employer's conduct as illegal or fraudulent . . . may be engaging in protected activity," while "[o]ne who simply reports 'mischarging' or investigates the employer's non-compliance with federal or state regulations does not."  Mem. Op. 10 (*citing Eberhardt*, 167 F.3d at 869; *Zahodnick*, 135 F.3d at 914 (internal quotations and alterations omitted)).

　　　　Given the dearth of Fourth Circuit precedent elaborating on the "distinct" or "reasonable" possibility standard, the Court also reviewed the manner in which three other jurisdictions - the District of Columbia Circuit, the Third Circuit, and the district courts within the Eleventh Circuit - have applied it.  Mem. Op. 17-21.  It then explained why it disfavored the later two formulations and preferred the District of Columbia standard.  Mem. Op. 21.  In that jurisdiction, to determine whether an employee's activity was "protected," the court looks to whether he or she possessed a "good faith" belief "at the time of the retaliation" that made it "reasonable to conclude there was a 'distinct possibility' [the plaintiff] would find evidence" that the defendant had submitted false claims on the Government.  Mem. Op. 21 (*citing U.S. ex rel. Yesudian v.*

*Howard Univ.*, 153 F.3d 731, 740-41 (D.C. Cir. 1998)). "Mere dissatisfaction with one's treatment on the job is not, of course, enough. Nor is an employee's investigation of nothing more than his employer's non-compliance with federal or state regulations." *Yesudian*, 153 F.3d at 740 (citation omitted). Whether the defendant is ultimately shown to have made a false claim is irrelevant under this standard. Mem. Op. 21 (*citing Yesudian*, 153 F.3d at 740-41).

As noted above, Plaintiff does not appear to argue that the Court's analysis of the relevant law is incorrect, rather, he disputes its application of the law to the evidence presented on summary judgment. Plaintiff also objects to various "erroneous factual finding[s]" that it claims the Court made. Pl.'s Mot. for Recons. 15. The Court will address both of Plaintiff's arguments below.

> B. <u>Plaintiff Did Not Present Evidence that Could Show that He Engaged in Protected Activity</u>

It applied all of various formulations of the "distinct possibility of litigation" standard to the evidence before it and concluded that Plaintiff's actions could not have created a "distinct" or "reasonable possibility" of FCA litigation. Mem. Op. 22-25. This result based on the Court's review of all of the evidence presented in the light most favorable to Plaintiff. Mem. Op. 16-17.

1.  *"Disaggregation" of Plaintiff's Alleged Activities*

Plaintiff's motion argues that the Court erred in its analysis when it evaluated "each of Mann's disclosures in isolation and out of context . . . [which] had the effect of substantially narrowing the scope of Mann's protected activities." Pl.'s Mot for Recons. 16. The Court disagrees with this characterization of its analysis. In the Memorandum Opinion, the Court specifically noted that "Plaintiff [failed to] clearly identify the conduct that he believes qualifies as protected activity." Mem. Op. 11. It thoroughly reviewed the entire record, consisting of thousands of pages and, in order to coherently evaluate the voluminous evidence, briefly summarized the various overlapping activities mentioned therein in an organized fashion. Mem. Op. 11. The Court confirms that it applied the "distinct possibility of litigation" standard to all of the evidence presented. Mem. Op. 12-13, 21-25.

Plaintiff also claims that the Court failed to consider his participation in HKD's internal investigation, which he submits should have been separately listed as one of Plaintiff's alleged "protected activities." Pl.'s Mot. for Recons. 14. The Court, however, did consider Mann's participation in the internal investigation with Defendant's Motion for Summary Judgment. Nothing in its opinion contradicts this. The Court thoroughly considered all of the evidence that both parties submitted.

8

2.  <u>Whether the Court Made Erroneous "Factual Findings"</u>

The Court has evaluated the specific "factual findings" to which Plaintiff takes exception in his motion. Pl.'s Mot. 6, 8, 15. First, the Court notes that it did not make any "factual findings" in disposing of Defendant's Motion for Summary Judgement. It evaluated all of the evidence before it in the light most favorable to Plaintiff, the non-moving party. Based on its evaluation and the applicable law, it concluded that the evidence presented would not allow a reasonable fact-finder to conclude that Plaintiff had engaged in protected activity. It cited to portions of the record to explain its conclusion.[3]

Further, many of the "factual findings" to which Plaintiff objects relate to Defendant's alleged actions, which are irrelevant to determining whether *Plaintiff* engaged in protected activity. The remainder simply reflect Plaintiff's disagreement with the Court's determination that Mann could not have reasonably believed that Defendant had defrauded the Government because his concerns only related to HKD's alleged violations of federal procurement regulations and the requirements of the RFP.

---

[3] That the Court's review of the evidence presented differs from Plaintiff's in some respects in unsurprising. In its opposition to Defendant's Motion for Summary Judgment, Plaintiff consistently misconstrued the deposition testimony to which he cited and on which he relied.

Plaintiff also argues that the Court inappropriately disregarded various "binding admissions"[4] by Defendant. Pl.'s Mot. for Recons. 10-13 (*citing* Einwechter Depo. 80, 84; Newton Depo. 59-61, 370; Weber Depo. 221, 253). Plaintiff inappropriately raises a new argument regarding these particular "binding admissions" in his motion for reconsideration. "Rule 59(e) motions may not be used [] to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citations omitted). This raises another issue presented by Plaintiff's claims. His "theory of the case is something of a moving target, and [his] inability throughout this litigation to settle on a straightforward reason for recovery is a revealing indication of the weakness of the underlying action." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008).

Finally, Plaintiff asserts that the Court erred in finding that Mann agreed that HKD should submit a non-complaint bid in response to the RFP. Pl.'s Mot. to Recons. 4 (*citing* Mem. Op. 24). Whether or not the Court made this conclusion in error, such an error would not affect the outcome of this case. The

---

[4] The Court also believes that Plaintiff's description of his cited deposition excerpts mischaracterize the relevant testimony.

Court did have granted Defendant's Motion for Summary Judgment even in the absence of this information or the presence of conflicting information.

Plaintiff's other arguments taking issue with the Court's application of the relevant law to the facts of this case are without merit.  Many are based on misconstructions of the underlying deposition testimony, the others relate to evidence or statements that did not form any basis of the Court's decision.

        3.   *Plaintiff Argues that the Court's Assessment of the Evidence Before it was Incorrect*

Plaintiff argued on summary judgment, and now continues to argue, that his complaints about, investigation of, and participation in an internal investigation of "Weber's scheme to fraudulently induce a contract award" from the Government constituted protected activity.  Pl.'s Mot. for Recons. 2; *see also* Pl.'s Opp'n to Summ. J. 9.  The Court stands by its conclusion, however, that Plaintiff did not present sufficient evidence that he engaged in protected activity.  Mem. Op. 25.  The evidence presented shows that Plaintiff "investigat[ed] nothing more than his employer's non-compliance with federal or state regulations," *Yesudian*, 153 F.3d at 740 (citation omitted), or "at most, [his employer's] non-performance of a contractual duty," *U.S. ex rel. Brooks v. Lockheed Martin Corp.*, 423 F. Supp. 2d 522, 530 (D. Md. 2006).

11

In order to convince the Court that its conclusion was incorrect, Plaintiff submits extensive excerpts from the deposition testimony that he presented to the Court in opposition to Defendant's Motion for Summary Judgment. Pl.'s Mot. for Recons. 2-5 (citations omitted). Although he has presumably selected the most favorable available testimony, these excerpts clearly show that Plaintiff only complained that Defendant's bid failed to conform to the RFP, *see* Einwechter Depo. 84:1-20; Mann Depo. 190:2-191:1, 293:9-18, or violated federal procurement regulations, *see* Mann Depo. 138:19-141:3. The record also shows that, at the time, Plaintiff himself believed that complained about a breach or a violation of federal regulations. Mem. Op. 24 (*citing* Mann. Depo. 190-91 (noting his attempts to research applicable federal regulations to determine whether Defendant had violated them)). Thus, even if Plaintiff at some point included the word "fraud" in his complaints about Defendant, he could not have "uncovered likely fraud" or engaged in protected activity. *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 869 (4th Cir. 1999)).

This conclusion holds true even were the Court to presume that Plaintiff did subjectively believe, at the time, that Defendant's alleged actions constituted "fraud" on the government. A employee's subjective belief that his employer is committing fraud is insufficient by itself to trigger the protections of the FCA's retaliation provision. In the Fourth

12

Circuit, an employee's investigation simply does "not rise to the level of protected activity until the employee uncovered likely fraud, thereby making litigation a reasonable possibility." *Eberhardt*, 167 F.3d at 869 n.2. Plaintiff's alleged activities thus do not constitute "protected conduct" under the FCA. Mem. Op. 25.

Plaintiff's alleged conduct is also clearly distinguishable from that in *Glynn v. EDO Corp.*, 536 F. Supp. 2d 595, 611-12 (D. Md. 2008), which Plaintiff cited in opposition to summary judgment. Pl.'s Opp'n to Summ. J. 5. In *Glynn*, the plaintiff identified a problem with a product his employer supplied to the Government. 536 F. Supp. 2d at 611. The employer fixed the problem, but the plaintiff eventually raised additional concerns about its "refusal to inform the government of the flaws in the previously-shipped products," setting off an investigation. *Id.* Here, Plaintiff identified a problem with a product included in a bid when he knew that Defendant had already informed the Government of its flaw - the absence of ambi-levers - within the bid itself. Mem. Op. 22 (*citing* Def.'s Mot. for Summ. J. Ex. 7 (Defendant's bid)); Mem. Op. 24 (*citing* Mann Depo. 190-91 (discussing the "will meet" language in Defendant's bid)). Plaintiff's insistence that he was aware of Defendant's intention to include language in the bid saying that it "will meet" the ambi-lever requirement, Pl.'s Mot for Recons. 11 n.3, only

further shows that Plaintiff could not have possessed a reasonable belief that Defendant intended to fraudulently induce the Government into awarding HKD a contract for non-conforming goods. Plaintiff has not pointed to evidence showing that Defendant submitted its bid intending never to comply with the RFP's ambi-lever requirement.

Plaintiff's further arguments that an intentionally non-conforming bid or an intentionally non-conforming bid coupled with an intentional violation of federal regulations raise the specter of likely fraud, Pl.'s Mot. for Recons. 4-5, 13, are without merit. The assertion that non-compliance with any of the myriad of detailed requirements in a RFP could constitute fraud has no basis in either the language of the statute or in current FCA case law. The Court also believes that such a proposition would be clearly unworkable. In addition, the simple combination of two activities that courts have specifically found do not constitute protected activity, see *Yesudian*, 153 F.3d at 740, *Brooks*, 423 F. Supp. 2d at 530, cannot overcome their essential deficiencies.

    4.    <u>Plaintiff Argues that "Fraud" is a "Magic Word"</u>

In his motion for reconsideration, Plaintiff argues for the first time[5] that once an employee refers to his employer's

---

[5] Plaintiff's argument thus an inappropriate subject for the instant motion. *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citations omitted).

conduct "us[ing] the magic word 'fraud,'" he "presumptively establishes" protected activity. Pl.'s Mot. for Recons. 3 (*citing Zahodnick v. Int'l Bus. Mach. Corp.*, 135 F.3d 911 (4th Cir. 1997)). This assertion, however, is unsupported by the relevant case law. Although the FCA's retaliation provision should be interpreted broadly, Mem. Op. 21, the Court must still evaluate whether Plaintiff has presented evidence that he "uncovered likely fraud." *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 869 (4th Cir. 1999)). In addition, the Court can imagine many a situation in which an employee used the word "fraud" but did not create a "reasonable possibility" of litigation.

The Court reiterates its original finding that, as a matter of law, Plaintiff did not engage in conduct that may be protected by the FCA's anti-retaliation provision. *See* Mem. Op. 25. That Plaintiff simply refuses to accept the Court's determination that his activities did not constitute protected conduct does not provide him with a meritorious motion for reconsideration.

### IV. Conclusion

Plaintiff has failed to show that an alteration or amendment of the Court's judgment of July 1, 2009 is necessary "to correct a clear error of law or prevent manifest injustice." *Pacific Ins. Co.*, 148 F.3d at 403. His motion merely "rehash[es]

arguments previously presented," *Consulting Eng'rs*, 2007 WL 2021901, at *2, and makes the failings in his legal and factual arguments even more apparent.  For these reasons, the Court will deny Plaintiff's Motion for Reconsideration.

       An appropriate Order will issue.

September 2, 2009                                           /s/
Alexandria, Virginia                            James C. Cacheris
                                            UNITED STATES DISTRICT COURT JUDGE