IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

JASON MANN,                         )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )       1:08cv611 (JCC)
                                    )
HECKLER & KOCH DEFENSE, INC.,       )
                                    )
        Defendant.                  )

## M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendant Heckler &
Koch Defense, Inc.'s ("HKD" or "Defendant") Bill of Costs.
Following summary judgment in its favor, HKD seeks to recover
costs from Plaintiff Jason Mann ("Mann" or "Plaintiff") in the
amount of $67,918.00.  For the following reasons, the Court will
grant $23,890.41 in costs.

## I. Background

This matter arose from Mann's employment as Law
Enforcement Sales Manager at HKD from April 2, 2007, to July 17,
2008.  On November 23, 2007, the United States Secret Service
(the "Secret Service") published a Request for Proposals ("RFP")
to procure assault rifles equipped with ambidextrous selector
levers (ambi-levers), with a proposal deadline of February 29,
2008.  HKD submitted a written proposal touting its HK416's

ambidextrous selector, which, in fact, was *not* equipped with ambi-levers.

After the RFP closed, Wayne Weber ("Weber"), Mann's supervisor, purchased after-market ambi-levers from a third-party and directed Robbie Reidsma ("Reidsma"), one of Mann's subordinates, to hand-deliver them to a Secret Service officer, which Reidsma did.

When Weber informed Mann of this, Mann expressed his disapproval to Weber, Reidsma, and other people inside and outside of HKD. HKD conducted a formal investigation into Mann's allegations and placed Mann on administrative leave. During this time, it restricted his access to email, phone, files, and the HKD office.

Mann instituted this action on June 11, 2008. He filed an amended complaint ("Amended Complaint") on July 18, 2008 stating four claims: retaliation in violation of 31 U.S.C. § 3730(h) after Mann complained to his superiors about possible fraud on the government (Count I), and again after he filed this action (Count II), and defamation by HKD's employees (Counts III and IV).

In response to Defendant's Motion to Dismiss the Amended Complaint, the Court dismissed Count II on October 7, 2008. It also dismissed Count IV with prejudice on February 10, 2009 in response to the parties' joint request. Defendant moved

for summary judgment in its favor on the remaining claims,
Counts I and III, on April 8, 2009.  The Court granted this
motion on July 1, 2009.  Plaintiff move to reconsider that
decision on July 15, 2009, but the Court denied that motion on
September 2, 2009.

Defendant now seeks to recover costs incurred
defending this case.  Defendant filed its Bill of Costs on July
13, 2009 [Dkt. 211 ("BOC")], which Plaintiff objected to on
[Dkt. 214 ("Opp.")].  Defendant filed its reply brief on August
3, 2009.  [Dkt. 220 ("Reply").]  Defendant's Bill of Costs is
before the Court.

## II.  Standard of Review

Federal Rule of Civil Procedure 54(d) permits a
prevailing party to recover costs where authorized by statute.
*Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444-45
(1987).  Where authorized, Courts have wide latitude to award
costs.  *Id.*  Moreover, Rule 54(d)(1) creates a presumption that
the prevailing party will be awarded costs.  *Fells v. Virginia
Dep't of Transp.*, 605 F. Supp. 2d 740, 742 (E.D. Va. 2009)
(citing *Cherry v. Champion Int.'l Corp.*, 186 F.3d 442, 446 (4th
Cir. 1999)).  Yet the prevailing party bears the burden of
showing that its requested costs are allowable under the
relevant statute--28 U.S.C. § 1920.  *Cofield v. Crumpler*, 179
F.R.D. 510, 514 (E.D. Va. 1998).

3

That statute identifies the following as costs a court may tax:

1) fees of the clerk and the marshal;

2) fees for printed or electronically recorded

3) transcripts necessarily obtained for use in the case;

4) fees and disbursements for printing and witnesses;

5) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

6) docket fees under 28 U.S.C. § 1923; and

7) compensation of court-appointed experts and interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828.

Once the prevailing party meets its burden, the burden shifts to the other side to identify "any impropriety of taxing the proposed costs." *Francisco v. Verizon S., Inc.*, --- F.R.D. ---, 2011 WL 781933, at *2 (E.D. Va. Mar. 2, 2011). The Court's award of costs will only be disturbed on appeal for abuse of discretion. *Id.* (citing *Herold v. Hajoca Corp.*, 864 F.2d 317, 321 (4th Cir. 1988)).

## III. Analysis

Defendant seeks to recover a number of costs it claims to have incurred defending this matter. The Court considers each in turn.

## A.    Private Process Server Fees

HKD seeks $100.00 for the *pro hac vice* admissions of its two out-of-state attorneys, $50.00 for each.  Plaintiff claims that these attorneys were unnecessary to this matter and that their fees need not be paid.

28 U.S.C. § 1920(1) provides that "[f]ees of the clerk" are taxable as costs.  And this Court has found that *pro hac vice* fees are taxable under this provision.  *Synergistic Int'l, L.L.C. v. Korman*, No. 05-49, 2007 WL 517676, at *2 (E.D. Va. Feb. 8, 2007) (awarding $150 in *pro hac vice* fees).

Plaintiff objects to fee taxation here because Defendant had three local counsel working on this case besides these two out-of-state attorneys, one of whom--John Einwechter-- did not take any depositions or argue any motions, and ended up being deposed in the case and serving as a witness.  Defendant's sole response to these arguments is that attorney necessity is not a prerequisite to an award of *pro hac vice* fees.  The Court agrees that *pro hac vice* fees are warranted for C. Allen Foster, Defendant's other out-of-state attorney.

As for Mr. Einwechter, however, this Court sees little justification for his *pro hac vice* fee.  Mr. Einwechter was retained to conduct HKD's internal investigation of Plaintiff's allegations and issued a report that HKD later accidentally turned over to Plaintiff during discovery in this matter.  [*See*

Dkt. 53.] The accidental release of that report led this Court to Order Mr. Einwechter's immediate deposition in this case, on January 16, 2009. [Dkt. 56.] That deposition took place on March 12, 2009. [*See* Dkt. 132, Ex. H.] It was only after his deposition that Defendant moved for Mr. Einwechter's admission, on March 18, 2009. [Dkt. 76-1.]

Thus, it should have been clear by the time Mr. Einwechter moved for admission that he had become a witness in this case, which would have necessarily circumscribed his ability to serve as counsel before this Court. (*See* Model Code of Prof'l Conduct R. 3.7.) His *pro hac vice* admission therefore seems unnecessary, and will not be taxed.

This Court will therefore award $50.00 in costs for HKD's *pro hac vice* fees.

B.  Private Process Server Fees

The next disputed cost is $2,699.00 for process server fees, much of which was paid to *private* process servers, making it not taxable in Plaintiff's view.

Courts are split as to whether private process server fees are taxable as "fees of the marshal." *See Schwarz v. Schwarz of Va., LLC v. Certain Underwriters at Lloyd's*, No. 6:07cv42, 2010 WL 452743, at *3 (W.D. Va. Feb. 8, 2010) (collecting cases). And while the Fourth Circuit has not spoken on the issue, "a clear majority of circuit courts recognize

6

private process server fees [as] taxable against the non-prevailing party." *Id.* (comparing cases from the Sixth, Eleventh, Seventh, Second, Ninth circuits with the Eighth Circuit). This Court, too, has permitted such fees. *O'Bryhim v. Reliance Standard Life Ins. Co*, 997 F. Supp. 728, 738 (E.D. Va. 1998). And it will permit them here where appropriate.

Plaintiff further argues that fees should not be taxed for subpoenas that "were not necessarily obtained for use in this case" and involved persons with little involvement with the transactions in question. Defendant responds that "necessity is not a factor in considering whether to award process server fees." (Reply at 4.) While the Fourth Circuit appears not to have spoken on the issue, other courts *have* considered whether such fees are "reasonably necessary." *Trading Techs Int'l, Inc. v. eSpeed, Inc.*, --- F. Supp. 2d --- , 2010 WL 4449720, at *8 (N.D. Ill. Oct. 29, 2010); *Ortho-McNeil Pharm., Inc. v. Mylan Labs. Inc.*, No. 1:02cv32, 2008 WL 7384877, at *3 (N.D. W. Va. Aug. 18, 2008), *aff'd in relevant part, vacated in part on other grounds*, 569 F.3d 1353 (Fed. Cir. 2009); *George v. GTE Directories Corp.*, 114 F. Supp. 2d 1281, 1299 (M.D. Fla. 2000); *Gorelangton v. City of Reno*, 638 F. Supp. 1426, 1434 (D. Nev. 1986). This Court agrees that such fees must have been reasonably necessary to Defendant at the time they were incurred.

Thus, turning to the first subpoena at issue, for Mr. Thompson, Plaintiff argues that Mr. Thompson had no knowledge of facts related to this case and was deposed regarding his interactions with Mann two decades ago, when both worked for the Los Angeles Sheriff's Department. (Opp. at 5.) Plaintiff also notes that it argued in a motion *in limine* (that was not granted) that Mr. Thompson's deposition was unavailable and that HKD did not rely on any information from him in its motion for summary judgment. *Id.* The Court finds the latter two arguments wholly unpersuasive and will focus on the reasonable necessity of Mr. Thompson to this case. Defendant argues that Mr. Thompson was deposed to obtain additional information regarding Plaintiff's background in light of information that Plaintiff was under investigation for his conduct relating to an unrelated weapons sale to the Blue Lake Police Department. (Reply at 4.) This Court finds that justification sufficient to warrant his service.

Regarding Ms. Mokler, Plaintiff alleges that her relevance to the case is as a custodian of records again relating to Plaintiff's police service twenty years ago. (Opp. at 5.) Defendant again responds that, like Mr. Thompson, her deposition was needed to investigate Plaintiff's background. (Reply at 4.) The Court again agrees with Defendant.

As for Dr. Williamson, a marriage counselor, and Mrs. Mann, Plaintiff's wife, Defendant argues that their testimony was useful to understanding Plaintiff's claims for damages. This Court again agrees, noting that Plaintiff sought damages for "mental and emotional distress, embarrassment, and humiliation, career damage, and harm to reputation." [Dkt. 7 at 19.]

Plaintiff also takes issue with E. Huth, an officer at Plaintiff's current employer. (Opp. at 5.) Defendant responds that essentially it was seeking to depose Plaintiff's employer, and that Mr. Huth appeared first for the deposition, at which it became clear that an additional witness, Mr. Augustine, would need to be deposed. (Reply at 5.) This Court finds these depositions reasonably necessary.

Next, Plaintiff argues that Messrs. Papac and Gunderson were never deposed and therefore should not be a source of fees in this case. Here the Court agrees; Defendant's briefing provides the Court with virtually no justification for their depositions, besides the insinuation that they were relevant to Defendant's background. (*See* Reply at 4.) Without at least some showing as to why these people were relevant to this action, this Court will not award these fees.

That leaves Mr. Dallas. Plaintiff argues that his only relevance to this case was that his testimony actually

disproved a claim that Plaintiff had disparaged HKD. (Opp. at

6.) Perhaps so, but surely Defendant did not *originally* seek to

depose Mr. Dallas for the purpose of refuting its own positions.

What matters is whether, *at the time Mr. Dallas was served*, his

testimony appeared reasonably necessary to Defendant. And

because Defendant expected Mr. Dallas to corroborate an

allegation that Plaintiff had disparaged it in some way, his

testimony was reasonably necessary to Defendant at the time it

served him. Thus, this Court will award his service fee.

Plaintiff additionally objects to certain "rush" fees

associated with the delivery of a series of Defendant's

subpoenas, claiming that such fees "are not taxable." (Opp. at

6.) Plaintiff cites two cases for the proposition that rush

fees are not taxable, neither of which *hold* any such thing. In

the first, *Kennedy v. Joy Technologies, Inc.*, 484 F. Supp. 2d.

502 (W.D. Va. 2007), the Court did not find that "'extra costs

associated with rush service fees' are *not* taxable costs," as

Plaintiff suggests (*see* Opp. at 6), the Court instead stated

"*in this instance*, I will not allow the extra costs associated

with rush service fees . . . to be taxed." 484 F. Supp. 2d at

504 (emphasis added). The Court chose not to award costs for

rush fees *in that instance*, but it did not state a general rule

that rush fees are never taxable.

As for *Southprint Inc. v. H3, Inc.*, No. 4:02cv38, 2005 WL 3177627 (W.D. Va. Nov. 23, 2005), the Court likewise did not find that "rush fees are not taxable," (*see* Opp. at 6), it instead found that, "as [the defendant] has not provided any reasonable justification for the need to incur additional fees for rush or expedited service, . . . those costs are not recoverable." 2005 WL 3177627, at *5. That finding indicates that, where reasonably justified, rush fees are indeed taxable. Indeed that standard is borne out by the case law. *See, e.g.*, *Ferris v. AAF-McQuay, Inc.*, 5:06cv82, 2008 WL 495656, at *1 (W.D. Va. Feb. 21, 2008) ("[A]ncillary costs such as extra copies and *expedited production* are not allowed *absent a showing of necessity*.") (emphasis added). This Court thus considers whether rushed service was necessary in this case.

Defendant argues first that its four rush deposition subpoenas were issued between March 9 and March 19, shortly before the March 27 close of discovery, and that the rush fee ensured service within 24 hours, rather than two to three days, and thus ensured that it would meet the discovery deadline. (Reply at 5 n.6.) Defendant argues second that its four trial subpoenas were served on a rush basis to ensure its recipients' attendance at trial and compliance with its service deadline. *Id.* The Court finds these justifications sufficient and will award rush fees in this instance.

## C. *Summary Judgment Hearing Transcript*

Defendant seeks reimbursement for the transcript from its hearing on summary judgment as a fee for "printed or electronically recorded transcripts necessarily obtained for use in this case." 28 U.S.C. § 1920(2). Plaintiff opposes this fee, arguing that the transcript was unnecessary in light of Defendant's obtaining summary judgment. But as before, the question is not whether the transcript is necessary *today*, it is whether that transcript was reasonably necessary for Defendants *at the time they ordered it*. And here, Defendant claims that the transcript was reasonably necessary to their trial preparation, especially as this Court's decision on summary judgment was issued just one week before trial was to begin. The Court agrees, and will reward the requested amount of $164.25.

## D. *Deposition Transcripts*

As with service costs, the parties dispute whether certain deposition transcripts were reasonably necessary to this case. For the reasons explained regarding those service costs, the Court finds that these depositions were reasonably necessary to Defendant at the time they were taken, and therefore that they are taxable.

Plaintiff also protests rush fees associated with these transcripts, arguing again that rush fees are not taxable.

12

As the Court has already explained, however, rush fees are indeed taxable where reasonably justified. And here, Defendant argues that the fees are justified by the fact that most depositions occurred two or fewer weeks before Defendant's summary judgment motion was due, meaning that the transcripts were needed as soon as possible. (Reply at 7 n.8.) This Court finds that justification adequate and will therefore tax the full amount of $16,577.55.

E. *Videography Fees*

Defendant is seeking $3,212.50 in videography fees for the depositions in this case. Plaintiff disputes the necessity of these videography services, particularly for Mr. Galvin, who Plaintiff claims was videotaped for impeachment at trial. (Opp. at 9.) Fees for videography of a deposition are only available where "necessarily obtained for use in the case." *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 449 (4th Cir. 1999) (citing 28 U.S.C. § 1920(2)). Defendant argues that videography was necessary for witnesses Gundersen, Aliveto, Mokler, and Thompson, because all resided and worked outside the Court's subpoena power, making their taped testimony potentially necessary for use at trial. Plaintiff does not respond to these claims.

Similarly, Defendant argues that Mr. Galvin's deposition needed to be taped because he, as a Secret Service

13

officer, might not be permitted to testify in Court.  Here
Plaintiff responds that in fact the Secret Service agreed to
produce Mr. Galvin at trial, eliminating any need for a
videotape.  (Opp. at 10.)  Defendant does not respond to this
argument, which, if true, undermines its claim that this
videography was reasonably necessary.  This Court therefore will
not award his videotaping fee.

Finally, Defendant claims that video was required for
its deposition of Plaintiff for effective trial preparation and
for potential impeachment at trial.  Plaintiff argues nothing in
response, and this Court agrees with Defendant.

Thus, this Court will tax $3,112.50, which includes
fees for all but Mr. Galvin's videotaped testimony.

F.  *Printing and Witness Disbursement Fees*

Section 1920(3) permits the Court to tax "fees and
disbursements for printing and witnesses."  Defendant seeks
$1,243.16 in such fees.  Plaintiff argues that certain witnesses
should be precluded from taxation, again because their testimony
was allegedly unnecessary and irrelevant.  (Opp. at 10.)
Because this Court has already found otherwise, it will tax
these fees.

G.  *Paper Copying Costs*

Defendant seeks $7,256.20 in paper copying costs
pursuant to 28 U.S.C. § 1920(4).  Section 1920(4) refers to fees

14

for "the costs of making copies of any materials where the copies are *necessarily obtained* for use in the case." (emphasis added). "The burden is on the party seeking recovery of photocopying costs to demonstrate the reasons for each copying charge." *Ford v. Zalco Realty, Inc.*, 708 F. Supp. 2d 558, 563 (E.D. Va. 2010). Two sets of copies are at issue here, those produced by an outside copying vendor, and those produced in house. (BOC at 11-12.) The Court considers each in turn.

For the outside copies, Plaintiff argues that copying costs are only taxable where "used as court exhibits or [where] furnished to the court or opposing counsel." (Opp. at 10 (citing *Sun Pub. Co. v. Mecklenburg News, Inc.*, 594 F. Supp. 1512, 1524 (E.D. Va. 1984)).) The Court agrees. *See, e.g.*, *Ford*, 708 F. Supp. 2d at 563. In light of this rule, Plaintiff claims that copies of exhibits for preparation of J. Mann and R. Edelman's depositions are not taxable, as neither exhibit was obtained for the Court or for opposing counsel. (Opp. at 11.) Defendant presents no argument to the contrary, and this Court therefore will not tax these items.

Plaintiff claims that the remaining outside cost-- copies of HDK's trial exhibits "obtained for the Court and for Plaintiff"--must also be precluded from taxation because Defendant failed to itemize the costs incurred for these exhibits. (Opp. at 11.) It is clear that, with respect to

15

copying costs, mere submission of a receipt, without any

specification as to "what was copied," does not warrant

taxation. *Ford*, 708 F. Supp. 2d at 563. The receipt submitted

here, like that in *Ford*, does not specify what was copied; it

just gives a total dollar amount. (*See* BOC Ex. D-1.) Thus,

this Court will not tax these copying costs, meaning that none

of Defendant's outside copying costs ($2,303.80) will be taxed

in this case.

Turning now to in-house copying costs, Defendant

submits a set of itemized costs, totaling at $435.90, as well as

a set of non-itemized costs, in the amount of $4,516.50.

Plaintiff argues that, itemized or not, in-house copies are

simply not taxable unless incurred for use at trial or provided

to opposing counsel or the Court. (Opp. at 11.) Courts seem to

differ on this issue; some, cited by Plaintiff, appear to

support Plaintiff's suggested rule. *See Thomas v. Treasury

Mgmt Ass'n, Inc.*, 158 F.R.D. 364, 372 (D. Md. 1994) (finding

that costs "for in-house photocopying . . . are, in the Court's

view, inappropriate") (citing *McIlveen v. Stone Container Corp.*,

910 F.2d 1581, 1584 (7th Cir. 1990) (finding copying of court

filings for counsel's own use not taxable)). Yet others, not

cited by Plaintiff, take a different view. *See, e.g.*,

*Rodriguez-Garcia v. Davila*, 904 F.2d 90, 100 (1st Cir. 1990)

("While appellants argue that [Section 1920(4)] should be

limited to copy costs for documents actually filed, we decline to adopt so narrow an interpretation of the statute. Instead, we find that if the costs were reasonably necessary to the maintenance of the action, then they are allowable.").

This Court considered this issue in *Jefferson v. Briner, Inc.*, No. 3:05cv652, 2006 WL 2850648 (E.D. Va. Sept. 29, 2006), adopting the position that "copying costs are necessarily incurred in the pursuit of a successful effort, whether or not the materials are actually made part of the record." *Id.* at *2. The Court refused to tax costs because it was unable, in that instance, to distinguish between "necessary" expenses and those obtained for the party's convenience. *Id.; see also Simmons v. O'Malley*, 235 F. Supp. 2d 442, 444 (D. Md. 2002) ("Copies obtained merely for the convenience of plaintiff's counsel . . . ordinarily are not allowed.") This Court will apply this reasoning to Defendant's submission in this case.

Starting with the itemized in-house copies, having carefully reviewed Defendant's itemized list, this Court finds the listed expenses to have been necessarily incurred in the pursuit of a successful effort in this case, with four exceptions: $0.90 for "provision of documents to experts," $4.50 for "Attorney Review of motion to compel," $11.25 for "Attorney review of opposition to Motion for Summary Judgment," and $0.30, for Mr. Einwechter's *pro hac vice* motion, in the latter case

because this Court is finding Mr. Einwechter's *pro hac vice* fee untaxable. (*See* BOC Ex. D-2.) For these four exceptions, this Court is unable to determine from the information given whether these copies were made out of necessity or convenience. Thus, the Court will tax $418.95 for itemized in-house copies.

As for the remaining in-house copies, as with the Court in *Simmons*, this Court does not "question[] counsel's good faith" in submitting these costs as legitimate, however "there does not appear to be a sufficient showing for the [C]ourt to exercise its discretion to determine that these costs are properly reimbursable rather than incurred simply as a 'convenience' to counsel." 235 F. Supp. 2d at 444. Defendant presents no explanation for the necessity of these copies, except perhaps the insinuation that its 25% deduction was for copies made for the convenience of counsel, implying perhaps that 75% of its copies were not made for convenience of counsel. While this Court recognizes that it may be practically difficult in many cases to explain copying costs at a level that meets the standard for necessity, Defendant's submission in this case falls well short of that standard. As in *Simmons*, "[i]n the absence of more specific explanation, these costs will not be taxed." *Id.*

Thus, this Court will tax $418.95 in paper copying costs.

## H. *Electronic Copying Costs*

Defendant seeks $36,676.34 for costs paid to an outside vendor for preparing its electronic document production. The vendor compiled electronic files into an electronic database of documents to be turned over to Plaintiff, converted the files from their native format to TIFF format, branded the images with Bates numbers, and burned them onto CDs for production. (BOC at 13.) Allegedly, these documents were always in an electronic format. *Id.* The costs were $1,561.34 associated with the actual production of documents to Plaintiff and $35,115.00 for the creation of the database. (BOC at 14.) Plaintiff contests all of these costs.[1]

The parties spend significant portions of their analyses discussing *Fells v. Virginia Department of Transportation*, 605 F. Supp. 2d 740 (E.D. Va. 2009). In *Fells*, the Defendant sought costs of "electronic records initial processing, Metadata extraction, [and] file conversion." *Id.* at 743. The Court distinguished these tasks, which it described as *creating* electronically searchable documents, from *scanning*

---

[1] There is some case law support for the notion that *no* discovery costs are recoverable under Section 1920(4), given that "the producing party possesses the original documents," meaning that those documents *may* not be considered "obtained for use in the case." *See Ortho-McNeil*, 2008 WL 7384877, at *8 (stating that discovery costs are not recoverable "[a]s a general rule" for this reason). This Court disagrees with that finding, however, as Section 1920(4)'s language certainly does not specify *which party* the copied documents must be "obtained" by. *See, e.g., Gottlieb v. Convergent Techs.*, 942 F.2d 791, 1991 WL 164258, at *10 (9th Cir. Aug. 26 1991) ("This construction of § 1920(4) appears novel and unduly narrow.").

(*i.e.*, converting a paper document into an electronic document), which is more akin to copying. *Id.* "In essence," the Court said, "defendant seeks to recover the costs of creating electronically searchable documents." *Id.* And the Court ultimately found that *creating* electronically searchable documents is not taxable activity under Section 1920(4)'s language, which permits recovery for expenses "for exemplification and . . . making copies of any materials where the copies are necessarily obtained for use in the case."[2]

The distinction in *Fells* between *creating* and *copying* is useful here. It strikes the Court as clear that, when starting with an electronic document, the process of burning the document onto a CD to turn over in discovery is "copying." And it likewise seems clear that where the document copied is responsive to a discovery request, it is "necessarily obtained for use in the case." *See* 28 U.S.C. § 1920(4). Thus, having carefully reviewed Defendant's *production* costs in this case, this Court finds that they qualify as "copying" for purposes of § 1920(4), and therefore will tax $1,561.34.

As for the costs of creating Defendant's database, this Court is not convinced that such tasks as "Searching and

---

[2] Although circuits are split concerning the meaning of "exemplification," neither operative definition appears applicable to the electronic services at issue here. *Compare Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 427 (7th Cir. 2000) (exemplification "signifies the act of illustration by example") *with Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001) (exemplification is "[a]n official transcript of a public record, authenticated as a true copy for use as evidence").

Deduping," and "Creation of Native File Database with Full Text and Metadata Extraction," qualify as "copying" as opposed to "creating." *See Fells*, 605 F. Supp. 2d at 743. As in *Fells*, this Court will not extend the Section 1920(4)'s language to costs not enumerated under that section. *Id.* (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442-45 (1987)) (federal courts cannot "exceed the limitations explicitly set out in [Section 1920] without plain evidence of congressional intent").

Here, Defendant notes that Congress revised Section 1920 in October 2008 to permit taxation for "making copies *of any materials* where the copies are necessarily obtained . . ." (emphasis added), whereas the statute previously referred only to "copies of *papers*." That language perhaps indicates legislative openness towards taxation of copies of things besides paper, but it still requires *copying*. And this Court finds that, in this instance, Defendant has not shown that its costs of creating its electronic database from already existing electronic documents qualify as copying costs within Section 1920(4). Thus, this Court will not tax costs for creation of the database.

I.   *Taxed Costs*

Thus, having carefully considered the briefing at issue in this case, this Court will tax the following costs:

| Service taxed | Amount Taxed |
|---|---|
| *Pro hac vice* fees | $50.00 |
| Service fees | $2,324.00 |
| Summary judgment hearing transcript | $164.25 |
| Deposition transcripts | $16,577.55 |
| Videography fees | $3,112.50 |
| Paper and disbursement fees | $1,243.16 |
| Paper copying fees | $418.95 |
| TOTAL | $23,890.41 |

### III.  Conclusion

For these reasons, the Court will tax an amount of $23,890.41.  An appropriate Order will issue.

|  |  |
|---|---|
|  | /s/ |
| April 28, 2011 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |